Julian Hertz, J.
The defendant, Amerada Hess Corporation, is accused of an allegedly unauthorized "filling in” of waterfront property in violation of rule 3(b) of the Rules and Regulations of the New York City Department of Ports and Terminals.
The defendant corporation contends that it did not "fill in” the land within the meaning of rule 3(b). The defendant also contends that said rule 3(b) is defective in that the statute is vague, and the Commissioner of the Department of Ports and Terminals, in prohibiting the conduct of the defendant, has acted beyond his delegated powers.
At the trial, the following pertinent facts were elicited:
On November 19, 1973, Inspector Ralph De Lillo of the Department of Ports and Terminals testified that while conducting an inspection of the Westchester Creek area in the Bronx, he discovered on the premises 1392 Commerce Avenue, occupied by the defendant, that broken concrete had been dumped recently along the bank of the Westchester Creek and into the water for a distance of approximately 100 feet. The newness of the concrete was determined by the lack of oil stains on it. After ascertaining that no work permit had been issued to the defendant authorizing the dumping of the concrete, the inspector issued a summons to defendant for violation of rule 3(b) of the Rules and Regulations (Waterfront) of the New York City Department of Ports and Terminals.
The inspector, on cross-examination, stated that he had not studied a survey of the channel line or bulkhead line of Westchester Creek. No water line change had occurred.
The defendant contends that the concrete in question was on the bank above the high-water mark. The defendant corporation alleges that the concrete in question was emplaced to *1038 prevent "pollution by material silting” and to redefine the property line to its former boundary.
The defendant further contends that the property line was not extended by the placement of the concrete, nor did its action interfere with the navigability of the waterway by the public.
The final contention by the defendant corporation is that rule 3(b) is unconstitutional in that it is vague and overbroad.
Thus the issues presented are: did the conduct of the defendant corporation constitute an illegal "filling in” of land in violation of rule 3(b); if the defendant’s conduct did not constitute an illegal "filling in,” is its conduct still prohibited; and is the statute unconstitutional?
Rule 3(b) of the Rules and Regulations of Ports and Terminals states as follows: "No person shall drive any piles or fill in or make any removal, dredging or demolitions of any kind on or about any waterfront property or marginal street without first obtaining a written permit from the Commissioner.”
The term "fill in” or "filling in” has been defined as "dumping dirt, refuse, or rubble on a tract of low land.” (Ballantine’s Law Dictionary.)
There is no doubt that the State and local governments have the power to regulate and control the water resources and navigable waters under their respective control. The rights of riparian owners must yield to the exercise of such a police power. (New York State Water Resources Comm. v Liberman, 37 AD2d 484, app dsmd 30 NY2d 516.) Any use made of riparian rights must be made in such a way as does not interfere with navigation (Moyer v State of New York, 56 Misc 2d 549). Nevertheless, as stated in New York Jurisprudence (vol 63, § 183): "The owner of the shore or bed of a navigable stream or other body of water is ordinarily entitled to reclaim the submerged land by filling out to the line of navigability.” (See Tiffany v Town of Oyster Bay, 234 NY 15.)
Having set forth the above relevant principles of law, it is now incumbent on this court to seek the legislative intent of rule 3(b). A look at similar State and Federal statutes will provide some guidance.
Subdivision 6 of section 15-0105 of the Environmental Conservation Law, entitled "Declaration of policy,” states: "In recognition of its sovereign duty to conserve and control its water resources for the benefit of all inhabitants of the state, *1039 it is hereby declared to be the public policy of the state of New York that: * * * 6. Alterations in the conditions of waters and water courses be planned and carried out in such manner that the important uses will be impaired as little as possible” (emphasis added).
Section 15-0505 of the Environmental Conservation Law states: "No person * * * shall excavate or place fill in any of the navigable waters of the state * * * unless a permit therefor shall have first been obtained” (emphasis added).
The Federal law contains a similar edict: " it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of, any port * * * canal, lake * * * or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers” (US Code, tit 33, § 403; emphasis added).
Thus the statutory effect of the Federal, State, and local legislation is obviously directed at obstructions to navigation. Each jurisdiction is attempting to maintain navigable passageways free from obstruction, be it an actual interference or such an obstruction as makes navigation less convenient or expeditious.
A careful reading of the statute indicates a concern with fill or obstructions finto” a navigable waterway or to prevent such conduct that will impair navigability. The effect of the enactments cannot be to reproach a landowner from fortifying a boundary on a navigable body of water or a waterway.
Situations exemplifying the above-mentioned statutes show that they are designed to interdict what occurs when a person or corporation places fill in navigable waters adjacent to property without first obtaining a permit (see Diamond v Liberman, 43 AD2d 620); or where industrial deposits are placed in rivers so as to reduce depth (United States v Republic Steel Corp., 362 US 482); or the overloading of riparian land with bricks, granite and fill so as to cause a mud slide (United States v Perma Paving Co., 332 F2d 754).
But while a riparian owner who seeks to improve his property must do so without obstructing the navigability of a waterway or without destroying the property of another riparian owner (Rutz v City of St. Louis, 10 F 338 [1882], he is, nevertheless, entitled to build some form of protection to establish his boundary or to prevent the loss of soil by the process of erosion (Doemel v Jantz, 180 Wisc 225 [1923]).
*1040 This court rejects the conclusion that rule 3(b) requires permission from a governmental body before a person or a corporation reinforces his or its existing boundary line. Further, the court rejects the view that a boundary repair is the equivalent of a fill operation within the meaning of the section. In that regard the proof fails.*
The charge against the defendant corporation is therefore dismissed.

 The court questioned Inspector De Lillo as to the change in the water line.
"the court: In other words, did you see a difference between the condition of that line on the date of the issuance of this summons and on a prior date?
"the witness: No, but I did see new concrete”.