JESSE H. MEADVIN et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 37297.)

Fourth Department, January 7, 1965.

*Louis J. Lefkowitz*, Attorney-General (*Emil Woldar* and *Paxton Blair* of counsel), for appellant.

*Gerber, Reiss & Gerber* (*Joseph Reiss* of counsel), for respondents.

GOLDMAN, J. The issue in this condemnation proceeding involves title to two parcels of land lying in the old channel of Onondaga Creek in the City of Syracuse. The resolution of the problem is concerned with whether the claimants ever received title to the center of the creek bed although the language in their quitclaim deeds from the city expressly conveys " to the center line of Onondaga Creek as it existed prior to July 1917 ". The Court of Claims found in effect that the claimants were successors in title to the original grantee from the State which was given title by letters patent using language signifying a grant to the center of the bed. We do not disagree with the construction of the language in the letters patent but rather with the result reached by the Court of Claims in view of subsequent conveyances and their effect on the creek bed land.

The law, briefly stated, is that in the absence of express reservation or language from which such a reservation may be implied, a grant of land on a nontidal stream extends to the center of the stream (*People v. System Props.*, 2 N Y 2d 330, 342; *Fulton Light, Heat & Power Co. v. State of New York*, 200 N. Y. 400, 412; *Matter of Jennings*, 6 Cow. 518; 6 Warren's Weed Real Property, 277). If property is bounded by a stream, the grantee takes to the thread and if the grantor desires to retain title to any of the land under water, there must be express words overcoming the effect of the presumption that he intended to convey such property, or the description must thoroughly exclude it (*Stewart v. Turney*, 237 N. Y. 117).

The State acquired title to the Salt Springs area near Onondaga Lake, which includes the parcels whose title is in dispute, from the Onondaga Indians in 1795. In 1895 the State issued letters patent to the first grantee, The Syracuse Solar Salt Company, using in part the following language: " east to the Onondaga Creek; thence along the said creek as it winds and turns and along the New Channel thereof to a point where * * * if prolonged would intersect the new channel of said creek ". The language, " as it winds and turns ", is construed as conveying title to the center of a stream (*Luce v. Carley*, 24 Wend. 451;

*The Seneca Nation of Indians* v. *Knight*, 23 N. Y. 498). The Court of Claims relied on this language in determining that the State granted the fee to the center of the creek to The Syracuse Solar Salt Company and concluded that the claimants were successors in title to such ownership. However, the next conveyance in 1901, from Syracuse Solar to Hawley and others, used the following language which specifically excluded the creek bed: " * * * to the left bank of the Onondaga Creek ".

At this point, it is clear that if Syracuse Solar had title to the center of the creek, it did not convey that title to Hawley. Language specifically limiting the grant to the left bank of the creek does not convey the fee to the center (*Fulton Light, Heat & Power Co.* v. *State, supra*). It is also clear that subsequent conveyances in 1905 and 1909, which used the same language as in the 1901 deed, did not convey any fee to the center of the creek because the grantors could not convey land to which they did not have title. Then in 1920, in connection with condemnation proceedings by the City of Syracuse for street openings and extensions, an award was made to the 1909 grantee, Salt Springs Solar Coarse Salt Co., by the Onondaga County Court for what in effect are parcels Nos. 6 and 7. The order confirming the Commissioner's report recites that the award was made for parcels described as running to " the said center line of Onondaga Creek ". It should be noted in connection with the descriptive language in the condemnation decree that the center line of the creek is identified with the northwesterly and westerly boundary lines of lands acquired by the State for Canal Terminal purposes. The difficulty is that the State's westerly boundary of the land acquired for canal purposes was the right bank, not the center, of the creek. The State's notice of appropriation for Barge Canal land indicates that the appropriation went only to the right bank of the creek. Furthermore, it is clear that the city in condemning the land could not affect the land within the bed of the creek, for title to such land was reserved in either the State or Syracuse Solar Salt Co. Accordingly, the quitclaim deeds from the city to the claimants in 1942 and 1944 did not and could not convey property to which the city had no title.

The Court of Claims found as to parcel No. 6 that the State appropriated in fee approximately 7,378 square feet and that the fair market value was $12,000. As for parcel No. 7, the court found that the State appropriated about 2,000 square feet and that the fair market value was $2,500. The Court of Claims findings as to the market value per square foot of these parcels are

supported by the evidence and need not be disturbed. However, the award must be modified by eliminating the land contained in the bed of the creek, to which claimants did not have title. We find that the claimants are entitled to damages for the taking of the property as described in the State's appropriation maps, to wit, for the approximately 4,400 square feet (parcel No. 6) the sum of $7,100 and for the approximately 1,045 square feet (parcel No. 7) the amount of $1,300, in addition to the $400 for the temporary easement for parcel No. 5, or a total of $8,800, plus interest.

WILLIAMS, P. J., BASTOW, NOONAN and DEL VECCHIO, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with the opinion and as modified is, together with the order, affirmed, without costs of this appeal to either party.