■ G. Croft Henry et al., Respondents-Appellants, v Edward Malen et al., Appellants-Respondents. [692 NYS2d 841] —Mercure, J. P. Cross appeals from a judgment of the Supreme Court (Fromer, J.H.O.), entered May 20, 1998 in Greene County, upon a decision of the court in favor of plaintiffs.

Plaintiffs and defendants are owners of adjoining properties located in the Town of Jewett, Greene County. Plaintiffs acquired title to their property, comprised of approximately five acres of land, in 1987 and defendants acquired title to their 68-acre parcel in 1991. The boundary line between the properties, which is at the heart of the present controversy, was established in an 1867 deed from Isaac Tiffany to Luther Bullard (hereinafter the 1867 deed). Constituting the source of

plaintiffs' title, that deed contains the following description: "All that piece or parcel of land lying situate in the Town of Jewett in the County of Greene and State of New York and bounded as follows viz: commencing at the centre of the highway on the line between Moses Winter and * * * Tiffany running North along said line twenty two rods to stake and stone, thence Westerly thirty-two rods across a field to a stone wall, thence Westerly along said wall *to the Brook, thence Southerly along the Brook following the fence along the Brook as it now runs to the centre of the highway,* thence Easterly along the centre of the highway to place of beginning-containing sixteen acres of land be the same more of less. * * * The [grantor] also grants [the grantee] the privilege of the right away [*sic*] to three places to said brook for the purpose of watering places by the [grantee] keeping the same fenced" (emphasis supplied).

Title to defendants' property derives from an 1876 deed from Tiffany to Sylvester Scovill (hereinafter the 1876 deed), which sets forth the following description of the property conveyed: "All that certain piece and parcel of land lying and situate in the Town of Jewett, County of Greene and State of New York, and bounded as follows viz: Commencing at the center of Highway near a Bridge; *thence Northerly along the lands of Luther Bullard as the fence now runs,* thence Easterly along said lands of Luther Bullard to the lands of Moses Winter [deceased], thence North along said lands of Moses Winter to the lands of Abner Woodworth [deceased], thence Westerly along the lands of Abner Woodworth [deceased], Peter Moseman and Albert Beers to the lands of I. C. Tiffany, thence Southerly along the lands of I. C. Tiffany and O. T. Northrup to the center of Highway, thence Easterly along the center of Highway to the place of beginning" (emphasis supplied). The deed also recites that the grantee "grants to Luther Bullard the privilege of three watering places, the said Luther Bullard to keep the same fenced".

In 1994, a property dispute arose between the parties concerning the location of plaintiffs' western boundary line. Believing that the line was defined by the brook referred to in the deeds set forth above, plaintiffs made some improvements to a portion of the property near the brook. It was defendants' position, however, that plaintiffs' boundary was marked by a stone wall that lay just east of the brook and that plaintiffs' actions on the portion of property west of that stone wall constituted an intrusion upon their land. Defendants therefore erected a wire fence situated somewhat to the east of the brook,

which blocked plaintiffs' access to the property west of the fence.

In June 1995, plaintiffs commenced this action seeking, *inter alia*, a declaration that they are the owners of the disputed property between the fence and the brook. In their answer, defendants counterclaimed for damages allegedly resulting from plaintiffs' trespass onto that property. Following a non-jury trial, Supreme Court found that the boundary line ran along the east edge of the brook but that the right-of-way to the three watering places in the brook was personal to Bullard and, thus, extinguished. Defendants appeal from so much of Supreme Court's judgment as finds that the east edge of the brook marked plaintiffs' western boundary line and plaintiffs cross-appeal from so much thereof as found that they have no right-of-way to the three watering places in the brook.

Initially, we are not persuaded to disturb Supreme Court's finding that the parties' common boundary line runs along the east edge of the brook and not the "stone wall fence" (as defendants characterize it) that is situated somewhat to the east of the brook. The primary objective in construing a boundary description is to arrive at the intent of the parties (*see*, 1 NY Jur 2d, Adjoining Landowners, § 65, at 557). As previously set forth, the description defining plaintiffs' western boundary provides that the line shall proceed (from the brook) "[s]outherly along the Brook following the fence along the Brook as it now runs to the centre of highway".[1] Since the references to the fence and the brook create an apparent ambiguity, an effort should be made to read the calls in such a way as to conform with one another if that can be done without giving an inauspicious meaning or construction to the particular description (*see*, *Smith v Trustees of Brookhaven*, 89 App Div 475, 480; *see also*, 1 NY Jur 2d, Adjoining Landowners, § 65, at 557).

Based upon the construction of the boundary descriptions and the language in the 1867 deed, we agree with Supreme Court's conclusion that it was the intent of the parties to designate the brook as the common boundary. Specifically, the description "to the Brook" indicates that plaintiffs' boundary line was to reach the brook and not some other designated point.

---

1. The 1876 deed's description of the same boundary calls for defendants' line to proceed "[n]ortherly along the lands of Luther Bullard as the fence now runs". We perceive no discrepancy in the boundary descriptions because the calls in the 1876 deed can be read in conjunction with the calls in the 1867 deed regardless of whether the location of the boundary line is the edge of the brook or the stone wall fence (*see*, *Chalmers v Lawrence*, 86 AD2d 907, 907-908).

Although there was conflicting testimony as to whether the brook or the stone wall marked the boundary line, since the brook is a natural object, under the rules of construction for discrepancies in deed calls, the brook would designate the boundary line (*see, Thomas v Brown*, 145 AD2d 849, 850-852). Further, had the parties intended that the fence, rather than the brook, be the boundary line, the deed would have likely provided for such a description. As such, it appears that the phrase "following the fence along the Brook as it now runs" acts as a directional aid rather than a boundary line. In addition, even if we were to assume that the fence referred to in the deed descriptions was intended to constitute the common boundary line, since the 1867 deed differentiates between a stone wall and a fence, we can assume that they are not one and the same, and the existing stone wall could not in any event be considered the fence designating such boundary unless there was evidence indicating that it was in existence in 1867. In the absence of any competent evidence that the stone wall was in existence in 1867 or that it was the fence referred to in the deed, we cannot conclude that the stone wall was the boundary line to the subject parcels of property.

Having determined that the brook marks plaintiffs' western boundary, it remains to determine whether the line follows the centerline or the east edge of the brook. Generally, when lands are conveyed with a brook or watercourse described as a boundary, it is presumed that the grantor intended that the boundary be located in the middle of such brook or watercourse unless there is an express intent to restrict the property to the edge or shore of the watercourse (*see, White v Knickerbocker Ice Co.*, 254 NY 152, 155-156; *Stewart v Turney*, 237 NY 117, 121-122; *Fulton Light, Heat & Power Co. v State of New York*, 200 NY 400, 417). Further, while a boundary description to the edge or bank of a stream or watercourse is generally construed as excluding the stream itself (*see, White v Knickerbocker Ice Co., supra*, at 157; *Meadvin v State of New York*, 22 AD2d 326, 328), where a boundary line reaches a watercourse and is described as "along the same", such description will be interpreted as including the lands to the middle of the watercourse (*see, White v Knickerbocker Ice Co., supra*, at 157; *Fulton Light, Heat & Power Co. v State of New York, supra*, at 417; *Meadvin v State of New York, supra*, at 327).

In the 1867 deed, the north boundary line of the property extends "to the Brook" and the west boundary line proceeds "thence Southerly along the Brook following the fence along the Brook as it now runs to the centre of the highway". Al-

though the language "to the Brook, thence Southerly along the Brook" would otherwise be construed as granting title to the center of the brook (*see, White v Knickerbocker Ice Co., supra*, at 157; *Fulton Light, Heat & Power Co. v State of New York, supra*, at 417; *Meadvin v State of New York, supra*, at 327), the express conveyance of a right-of-way to the three watering places in the brook rebuts the presumption that title is carried to the center of a watercourse. Obviously, if Bullard had been granted title to the center of the brook, there would have been no need for a right-of-way to the watering places (*see, People ex rel. Burnham v Jones*, 112 NY 597, 605-606). Based upon the foregoing, we conclude that establishing the boundary line at the east edge of the brook would not only conform with the other particular boundary descriptions contained in the 1867 deed, but it would comply with the intent of the parties that the boundary line go to the brook, but not include it.[2]

 Turning now to the cross appeal, we agree with plaintiffs that Supreme Court erred in its determination that the right-of-way to the three watering places in the brook was personal to Bullard and, thus, extinguished. Rather, we conclude that plaintiffs are correct in their contention that the 1867 deed's grant of a right-of-way to the three watering places created an easement appurtenant rather than a license.

"Although it is often difficult to distinguish between an easement, which is an interest in real property, and a mere license, which implies no such interest, a license can be distinguished by the fact that it is personal to the holder, is not assignable and is of limited duration" (*Simmons v Abbondandolo*, 184 AD2d 878, 879; *see, Race v Meyer*, 219 AD2d 67, 71; *see also*, 49 NY Jur 2d, Easements, §§ 195-197, at 327-330).[3] Whether an easement is appurtenant or merely a personal, noninheritable and nonassignable right depends upon the intent of the parties to the instrument in which the right-of-way was granted (*see, Loch Sheldrake Assocs. v Evans*, 306 NY 297,

---

**2.** Contrary to defendants' contentions, the edge of the brook could be the common boundary because if the grantee is not able to procure title to the land under the water, he or she cannot obtain any rights to go on the water for any purpose (*see, White v Knickerbocker Ice Co.*, 254 NY 152, 161, *supra*).

**3.** There are two broad classes of easements: (1) easements appurtenant and (2) easements in gross (*see*, 49 NY Jur 2d, Easements, § 7, at 92-93; 5 Warren's Weed, New York Real Property, Easements, § 1.03 [4th ed]). While an easement appurtenant, contemplating a dominant and a servient estate, provides an interest in land (*see*, 49 NY Jur 2d, Easements, § 8, at 93-94), an easement in gross is a "mere personal, nonassignable, noninheritable privilege or license" (*Loch Sheldrake Assocs. v Evans*, 306 NY 297, 304; *see*, 49 NY Jur 2d, Easements, § 9, at 94; 5 Warren's Weed, New York Real Property, Easements, § 1.03 [2] [4th ed]).

304). In making such a determination, the courts look to the language of the grant (*see, Wilson v Ford*, 209 NY 186, 196; *Stratis v Doyle*, 176 AD2d 1096, 1098; *Phillips v Jacobsen*, 117 AD2d 785, 786) and, where necessary, the construction of such grant may be aided by looking to the surrounding circumstances (*see, Loch Sheldrake Assocs. v Evans, supra*, at 304; *Wilson v Ford, supra*, at 196; *Phillips v Jacobsen, supra*, at 786).

Here, the 1867 deed provided in relevant part that: "the [grantor] also grants [the grantee] the privilege of the right away [*sic*] to three places to said brook for the purpose of watering places by the [grantee] keeping the same fenced." The grant of this right-of-way was accomplished by a deed, "connoting the transfer of an interest in real property" (*Evans v Taraszkiewicz*, 125 AD2d 884, 885; *see, Stratis v Doyle, supra*, at 1097). The language contained in the deed included words, such as "grant", "convey" and "forever", and phrases, such as "his heirs and assigns", which demonstrate that an easement was intended (*see, Clements v Schultz*, 200 AD2d 11, 13; *Stratis v Doyle, supra*, at 1097; *Evans v Taraszkiewicz, supra*, at 885). In addition, the deed did not contain any language reserving the right-of-way to Bullard (the original grantee) personally (*compare, Simmons v Abbondandolo*, 184 AD2d 878, 879, *supra*) nor did it purport to retain any rights of revocation (*see, Willow Tex v Dimacopoulos*, 68 NY2d 963, 965; *Evans v Taraszkiewicz, supra*, at 886). We do not read the 1876 deed as evidencing a contrary intent and note that such deed could not in any event alter the interest that had been granted in the 1867 deed, an easement appurtenant (*see generally, Meadvin v State of New York*, 22 AD2d 326, 328, *supra*).

We are also unpersuaded that the requirement that the grantee "keep the same fenced" created a condition subsequent and that failure of that condition has effected a forfeiture (*see, Stratis v Doyle, supra*, at 1098). Our reading of the 1867 deed evidences neither an intent to create a condition subsequent nor a right to retain any reversionary interests or rights of reentry (*see, id.*). In any event, defendants' failure to raise before Supreme Court the issue of whether the easement was extinguished precludes appellate review of such issue (*see, General Elec. Tech. Servs. Co. v Clinton*, 173 AD2d 86, 89, *lv denied* 79 NY2d 759). Based on the foregoing, we conclude that the grant of the right-of-way to use the three watering places created an easement appurtenant rather than a license (*see, Stratis v Doyle, supra*, at 1097; *Evans v Taraszkiewicz, supra*, at 886).

Defendants' remaining contentions have been considered and found to be unavailing.

Peters, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as found that the right-of-way to the three "watering places" contained in the deed from Isaac Tiffany to Luther Bullard, recorded December 21, 1867, is now extinguished, and, as so modified, affirmed.