■ Gerard Webster et al., Appellants, v Giacinto M. Ragona et al., Respondents, et al., Defendants. [776 NYS2d 347]—

Spain, J. Appeals from an order and an amended order of the Supreme Court (O'Brien, III, J.), entered October 23, 2002 and November 4, 2002 in Otsego County, which, inter alia, granted partial summary judgment to defendants Giacinto M. Ragona and Antoinette M. Ragona declaring that they hold a permanent easement over certain real property.

Plaintiffs commenced this RPAPL article 15 action seeking a declaration that their neighboring property owners, defendants Giacinto M. Ragona and Antoinette M. Ragona, hold no interest in plaintiffs' property by virtue of an easement agreement executed by plaintiffs' predecessor in interest, defendant Walter A. Peeters, in favor of the Ragonas. In the alternative, the complaint alleges a cause of action for monetary damages, claiming that the Ragonas have failed to comply with the terms of the challenged easement agreement, and a cause of action against Peeters for breach of the warranty and covenants contained in plaintiffs' deed. All defendants answered and the Ragonas counterclaimed, seeking, among other things, a declaration of their rights under the easement agreement. After joinder of issue, Supreme Court denied plaintiffs' motion for summary judgment and, searching the record, granted partial summary judgment to the Ragonas, declaring their rights to the easement over plaintiffs' property. Plaintiffs appeal, and we affirm.

The pertinent undisputed facts are as follows. Prior to 1994, Peeters owned and leased two adjacent commercial properties located on Main Street in the City of Oneonta, Otsego County, known as 26 Main Street and 32 Main Street. Dating back at least as far as 1977, tenants of the two parcels used a common driveway for ingress and egress to a parking lot located behind the buildings. The Ragonas began leasing 32 Main Street from Peeters in 1992 for use in the operation of a video store. They contracted to purchase the property from Peeters in 1994. The contract of sale expressly conditioned transfer of title on the Ragonas' ability to obtain subdivision approval from the City of Oneonta and "the granting of any necessary *permanent* easement for parking in the rear of the premises" (emphasis added).

Accordingly, on August 22, 1994, Peeters and the Ragonas executed a document entitled "Ingress and Egress Easement" (hereinafter easement agreement) which expressly recognized that 32 Main Street and 26 Main Street had previously shared a common driveway for ingress and egress from Main Street to the parking lot at the rear of the buildings and stated that the

Ragonas desired to obtain an easement from Peeters to continue that right. The grant language in the agreement specifically provided: "[Peeters] does hereby transfer, grant and covey [*sic*] to the [Ragonas], an easement and right of way from Main Street, Oneonta, New York between the properties at 32 Main Street on the north and 26 Main Street on the South for ingress and egress for unrestricted access to the front and rear of the building at 32 Main Street property, Oneonta, New York." The agreement also contained promises by the Ragonas to indemnify Peeters and "his heirs, successors and assigns" from liability arising out of the Ragonas' use of the easement, to carry adequate liability insurance to protect Peeters' interest, and to repair and maintain the common driveway. After obtaining the required zoning board approval, the Ragonas took title to 32 Main Street by deed executed on September 29, 1994 and continued to use the driveway, make repairs and to clear it of snow in the winter. The easement agreement, however, was not recorded until July 1995.

Meanwhile, dating at least as far back as 1992 when the Ragonas began leasing the neighboring property, plaintiffs had been leasing 26 Main Street from Peeters and operating a restaurant on the premises. On May 3, 1995, plaintiffs purchased 26 Main Street from Peeters, taking title by warranty deed which made no mention of the easement previously granted to the Ragonas. However, later that month plaintiffs requested an assignment of the easement from Peeters. It is unclear from the record whether any such assignment was ever made but, in September 1999, plaintiffs wrote to the Ragonas requesting compliance with some of the terms of the easement agreement, namely, proof that the Ragonas carried liability insurance in favor of plaintiffs and money for repairs which plaintiffs made to the driveway. Apparently unsatisfied with the Ragonas' response, plaintiffs commenced this action in December 2001.

Plaintiffs proffer two theories on appeal in support of a determination that the easement is not enforceable against them. First, they argue that, pursuant to Real Property Law § 291, they are not bound by the easement agreement because it was not recorded prior to their taking title to 26 Main Street. Second, plaintiffs contend that the easement agreement conveys only a license or "easement in gross" which was extinguished upon Peeters' transfer of 26 Main Street to plaintiffs.[1] We address the latter argument first and reject it, agreeing with

---

**1.** "There are two broad classes of easements: (1) easements appurtenant and (2) easements in gross. While an easement appurtenant, contemplating a dominant and a servient estate, provides an interest in land, an easement in

Supreme Court that the easement agreement clearly creates an appurtenant easement.

"[A]n easement appurtenant is created when such easement is '(1) conveyed in writing, (2) subscribed by the person creating the easement and (3) burdens the servient estate for the benefit of the dominant estate'" (*Niceforo v Haeussler*, 276 AD2d 949, 950 [2000], quoting *Strnad v Brudnicki*, 200 AD2d 735, 736 [1994]). The easement agreement fulfills all of these elements. Plaintiffs nevertheless argue that an easement appurtenant was not created, relying on the fact that the instrument does not expressly state that the easement is permanent and on Peeters' testimony that he did not intend to transfer a permanent easement to the Ragonas.[2]

While it is true that "[w]hether an easement is appurtenant or merely a personal, noninheritable and nonassignable right depends upon the intent of the parties to the instrument in which the right-of-way was granted" (*Henry v Malen*, 263 AD2d 698, 702-703 [1999]), as with any contract, where possible such intent should be gleaned solely from the language of the instrument creating the easement (*see id.*; *see also Loch Sheldrake Assoc. v Evans*, 306 NY 297, 304 [1954]). "It is only when language used in a conveyance 'is susceptible of more than one

gross is a 'mere personal, nonassignable, noninheritable privilege or license'" (*Henry v Malen*, 263 AD2d 698, 703 n 3 [1999] [citations omitted], quoting *Loch Sheldrake Assoc. v Evans*, 306 NY 297, 304 [1954]).

2. At oral argument before this Court, for the first time, plaintiffs argue that regardless of the parties' intent, an easement appurtenant cannot have been created because the instrument purporting to create the easement was executed at a time when Peeters still held title to both parcels; thus, they argue, separate dominant and servient estates did not exist, precluding the creation of an easement appurtenant (*see Cowan v Carnevale*, 300 AD2d 893, 895 [2002]; *Gross v Cizauskas*, 53 AD2d 969, 970 [1976]). The undisputed circumstances surrounding this particular transfer belie that argument and support the conclusion that there were distinct dominant and servient estates when the easement was actually transferred. The detailed contract of sale, dated June 1994, for 32 Main Street makes the transfer of "any necessary permanent easement for parking in the rear of the premises" a condition of closing, the easement agreement specifically contemplates the impending transfer of title to the Ragonas, actually citing that transfer as consideration for the grant of the easement and, finally, title was actually transferred approximately one month after execution of the easement agreement (*see Huntington v Asher*, 96 NY 604 [1884] [considering, in part, the content of the contract of sale to determine whether an easement appurtenant was created]; *Stassou v Casini & Huang Const.*, 241 AD2d 448, 448 [1997] [same]; *Riehlman v Field*, 81 App Div 526, 528 [1903] [same]). Under these circumstances, we hold that the only construction which can be given to the easement agreement is that it gave rise to an easement upon transfer of title of 32 Main Street to the Ragonas, at a point when the necessary distinction between dominant and servient estates existed.

interpretation' that the courts will look into surrounding circumstances, the situation of the parties, etc." (*Loch Sheldrake Assoc. v Evans, supra* at 304-305, quoting *French v Carhart,* 1 NY 96, 102 [1847]). In our view, the easement agreement at issue here can only be interpreted to convey an easement appurtenant. That the easement did not employ the term "permanent" or include an express reference binding Peeters' heirs and assigns is not dispositive (*see Stasack v Dooley,* 292 AD2d 698, 699 [2002]). The grant of such an easement need not include language expressly describing the easement as "permanent" because an easement appurtenant, once created, necessarily runs with the land (*see Loch Sheldrake Assoc. v Evans, supra* at 304; *Niceforo v Haeussler, supra* at 950). Indeed, the clear purpose of the agreement was to convert an informal right-of-way which was already in existence into a legally binding easement which would burden Peeters' estate (at 26 Main Street) for the benefit of 32 Main Street, the Ragonas' dominant estate. Significantly, the instrument did not contain any language restricting the easement or retaining any right of revocation (*see Cronk v Tait,* 305 AD2d 947, 948 [2003]; *Mondelli v Homik,* 288 AD2d 512, 513 [2001]; *Henry v Malen, supra* at 703). Accordingly, we need not look beyond the easement agreement itself to ascertain that the easement created thereby is binding upon Peeters' successors in interest, provided they had notice of the easement when they took title—which brings us to plaintiffs' remaining contentions.

Plaintiffs correctly point out that a good faith purchaser for value is not bound by an easement which is not properly recorded prior to a purchase of the encumbered property (*see* Real Property Law § 291; *Foster v Piasecki,* 259 AD2d 804, 805-806 [1999]). Here, while it is undisputed that the easement agreement was not recorded prior to the time that plaintiffs took title to 26 Main Street, the question remains whether plaintiffs can claim good faith purchaser status, i.e., whether they had "actual knowledge and notice of any facts which would lead a reasonably prudent purchaser to make inquiries" (*Ithaca Assoc. Co. v Plataniotis,* 274 AD2d 640, 642 [2000]; *see Tompkins County Trust Co. v Talandis,* 261 AD2d 808, 810-811 [1999], *lv dismissed* 93 NY2d 1041 [1999]).

In the complaint, plaintiffs allege that they were unaware, prior to purchasing 26 Main Street, that the property was encumbered by an easement or subject to use by the Ragonas. In their answer, the Ragonas allege that plaintiffs had both actual and constructive notice of their claim to the easement, claiming, among other things, that their conduct in maintaining

the disputed property would have caused a reasonable person to inquire about the status of that property. Moreover, Peeters, in his responses to interrogatories and his deposition, stated that prior to selling 26 Main Street to plaintiffs, he informed them that the Ragonas had a right-of-way over the driveway. In their affidavit submitted with their motion for summary judgment, plaintiffs merely claim to have been unaware of any "written easement" in favor of the Ragonas or anyone else and that Peeters told them that the easement was not binding on them as subsequent owners of the property. In their affidavits in opposition, the Ragonas cite a specific occasion where they directly informed plaintiffs of their easement rights prior to plaintiffs taking title to 26 Main Street and reiterate their actions in plowing and repairing the drive which would have put plaintiffs on constructive notice of the easement.

Notably, plaintiffs have not denied any of the specific allegations which would have put them on notice that the Ragonas were using the property in question; significantly, plaintiffs do not even deny that they had notice, prior to their purchase of 26 Main Street, that the Ragonas had a license to use the driveway. Instead, plaintiffs rely on the claim that they lacked notice that the easement was permanent and binding upon them as subsequent purchasers. Supreme Court correctly found that this claim is insufficient to preclude summary judgment in favor of the Ragonas because plaintiffs' knowledge that the Ragonas were enjoying use of the property was sufficient to charge plaintiffs with the duty to inquire about the nature and status of the right-of-way (*see Stasack v Dooley, supra* at 700; *Ithaca Assoc. Co. v Plataniotis, supra* at 642). We note that plaintiffs may not simply rely on Peeters' alleged representation to them that the easement was not permanent. Even if plaintiffs were misled in this regard, their misplaced reliance on Peeters' statement cannot operate as a means to gain superior right to the property over that of the Ragonas.

We have considered plaintiffs' remaining contentions and find that they are without merit. Supreme Court did not err in awarding summary judgment on an issue not raised in the motion papers inasmuch as plaintiffs, in asserting their status as purchasers in good faith, necessarily placed the question of actual and constructive notice in issue (*see* CPLR 3212 [b]). Likewise, summary judgment was not inappropriate in light of the unresolved issues surrounding the Ragonas' alleged noncompliance with the easement agreement. Supreme Court merely established the validity and nature of the easement. Questions of fact preclude judgment at this point concerning

whether the Ragonas have complied with the provisions of that agreement and, as a result, may enforce it (*see Danka Off. Imaging Co. v General Bus. Supply*, 303 AD2d 883, 884 [2003]).

Crew III, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order and amended order are affirmed, with costs.