*Koepp v. Holland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand fourteen.

PRESENT:

      ROBERT A. KATZMANN,
                    *Chief Judge*,
      PETER W. HALL,
      DEBRA ANN LIVINGSTON,
                    *Circuit Judges*.

---

CYNTHIA J. KOEPP; JOHN D. PLACE; TODD ZWIGARD; PADDINGTON M. ZWIGARD,

> *Plaintiffs -*
> *Counterdefendants -*
> *Appellees,*

     -v.-                                    No. 13-4097

SUSANNE HOLLAND,

> *Defendant - Counterclaimant*
> *- Appellant*.

---

                  MICHAEL G. BERSANI, Michaels & Smolak, P.C., Auburn, New York, *for Plaintiffs-Appellees.*

CHAIM J. JAFFE, (Douglas J. Mahr, *on the brief*), Scolaro, Fetter, Grizanti, McGough & King, P.C., Syracuse, New York, *for Defendant-Appellant.*

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court is **AFFIRMED.**

Defendant-Appellant Susanne Holland appeals from the final judgment of the district court (Mordue, *J.*), which granted to Plaintiffs-Appellees Cynthia Koepp, John Place, Todd Zwigard, and Paddington Zwigard (collectively, "the plaintiffs") declaratory and injunctive relief relating to their interests in various properties located on or near the shores of Cayuga Lake. On appeal, Holland argues that the district court erred in: (1) declaring that the plaintiffs hold title to the shorefront property running to the west of the land that Holland now owns and that was previously owned by various railroad companies (the "railroad strip"); (2) declaring plaintiffs' entitlement to three vehicular easements, limited at present to pedestrian access; (3) granting to the plaintiffs the right to construct docks and affix them to the seawall on Holland's land; (4) granting to the plaintiffs the right to install water pipes that would run underneath Holland's land; and (5) prohibiting Holland from erecting fences on the portion of the railroad strip running between the plaintiffs' inland and shorefront properties. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a district court's ruling on a motion for summary judgment de novo. *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013). Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the district court must construe the evidence in the light most favorable to the non-moving party, "drawing all reasonable

2

inferences in its favor." *Ne. Research, LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 207 (2d Cir. 2013) (internal quotation mark omitted). Following a bench trial, we review "a district court's factual findings for clear error and its legal conclusions de novo." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). Finally, this Court will reverse a district court's evidentiary ruling only if it finds that the district court "acted arbitrarily or irrationally." *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006) (internal quotation marks omitted).

Holland first argues that, under the doctrine of either accretion or adverse possession, she owns a strip of lakefront land to the west of the railroad strip. The district court found that the plaintiffs own the land west of the strip based on its construction of the relevant deeds, and Holland does not contest this finding. Instead, she argues that the district court incorrectly determined that there was shorefront land to the west of the railroad strip when Peter Fort and the Mandell family granted their respective portions of the railroad strip to the Cayuga Lake Railroad Company in 1872. But ample evidence, including expert testimony, supports the district court's finding. Therefore, the district court did not err in finding that the doctrine of accretion does not apply to these tracts of shorefront land. *See, e.g.*, *In re City of Buffalo*, 206 N.Y. 319, 327 (1912). Moreover, as to Holland's adverse possession argument, the record does not raise a genuine issue of material fact as to whether Holland or her family protected the land west of the railroad strip by a "substantial enclosure," or acted in a manner "sufficiently open to put a reasonably diligent owner on notice" of their claim to own the land for the statutory period. Real Prop. Acts. § 522(1)-(2); *see Walling v. Przybylo*, 7 N.Y.3d 228, 232 (2006). As a result, we agree with the district court's decision that plaintiffs own the shorefront west of the railroad strip.

Next, before turning to Holland's easement-specific challenges, we consider her argument that a bankruptcy order issued in 1982 extinguished all easements and covenants burdening the railroad strip that was subsequently sold to Holland's parents in 1984. In 1982, the Eastern District of Pennsylvania issued a Consummation Order effectuating the reorganization of the Lehigh Valley Railroad Company ("Lehigh Valley"). In the Order, the court provided, in relevant part, that the assets and property of the bankrupt railroad would:

> [V]est in and become the absolute property of the Reorganized Company and shall, [with narrow exceptions not relevant to this appeal], be free and clear of all claims, rights, demands, interests, liens and encumbrances of every kind and character, of the Debtor, its creditors, claimants and stockholders, whether or not properly or timely filed and whether or not approved, acknowledged or allowed in these proceedings.

J.A. 473. Holland reads this language to extinguish all pre-existing interests in the property, including easements and covenants. The district court, however, found that the property could only be sold free and clear of easements and covenants running with the land if the sale met the requirements delineated in 11 U.S.C. § 363(f). *See In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996) (analyzing, under 11 U.S.C. § 363(f), whether the sale of property was free and clear of other interests).

The district court's focus on 11 U.S.C. § 363(f) was misplaced. That provision is from the current Bankruptcy Code and governs situations in which a "trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). In this case, the Eastern District of Pennsylvania issued its Consummation Order during a *reorganization* pursuant to section 77 of the Bankruptcy Act, which permits "property dealt with by the plan" to be transferred to a reorganized entity "free and clear of all claims of the debtor, its stockholders and creditors." 11 U.S.C. § 205(f) (1970).

4

Despite this error, the district court correctly ruled that the Consummation Order did not extinguish plaintiffs' easements. Bankruptcy courts cannot extinguish the interests of parties who lacked notice of or did not participate in the proceedings. *See, e.g.*, *In re Johns-Manville Corp.*, 600 F.3d 135, 153-54 (2d Cir. 2010) (holding that bankruptcy is no exception to the due process principle "that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party to or to which he has not been made a party by service of process" (internal quotation marks omitted)); *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706 (S.D.N.Y. 2012). And as a precondition to reorganization, section 77 requires that judges provide notice to creditors and stockholders whose interests may be affected by the plan. 11 U.S.C. § 205(c)(8) (1970). Holland has not produced any evidence that plaintiffs' predecessor-in-interest — Wells College — received notice of the bankruptcy proceeding. Nor did Wells College's participation in Lehigh Valley's abandonment proceeding before the Interstate Commerce Commission relate to the subsequent bankruptcy or make any reference to the college's easements over the railroad strip. This lack of notice is not surprising, as it is unlikely that Wells College qualified as a "creditor[], claimant[], [or] stockholder[]" — the only interest holders to whom the Consummation Order applied. J.A. 473. We therefore agree with the district court's ruling that the Order did not extinguish plaintiffs' easements.

Turning to the specific easements, Holland challenges the district court's ruling that the plaintiffs have three vehicular easements over the railroad strip, which at present would be limited to pedestrian use only. In determining the nature and extent of the easements, the court properly considered "the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties." *Raven Indus., Inc. v. Irvine*, 40 A.D.3d 1241, 1242

5

(N.Y. App. Div. 2007) (internal quotation mark omitted).  In so doing, it did not err in deciding that the expressly granted vehicular easements ran with the land, *see Webster v. Ragona*, 7 A.D.3d 850, 853-54 (N.Y. App. Div. 2004), that they were intended to serve as vehicular crossings, *see, e.g.*, *Neuhaus v. Long Isl. R.R. Co.*, 30 A.D.2d 825, 825-26 (N.Y. App. Div. 1968), and that there was no evidence that they were abandoned, *see, e.g.*, *Gerbig v. Zumpano*, 7 N.Y.2d 327, 330-31 (1960); *Wallkill Farms Homeowners Ass'n v. Velazquez*, 205 A.D.2d 681, 682 (N.Y. App. Div. 1994).  The district court also adequately considered Holland's preferred locations for these vehicular easements before determining that those proposed locations were neither reasonable nor convenient in light of the plaintiffs' need to access the lake and their interest in building accessible docks.  *See, e.g.*, *Pomygalski v. Eagle Lake Farms, Inc.*, 192 A.D.2d 810, 812 (N.Y. App. Div. 1993).  Finally, the district court's decisions to admit evidence of the Village of Aurora's current zoning laws and to permit use of a demonstrative exhibit depicting the plaintiffs' desired dock locations were neither arbitrary nor irrational.  *See Nektalov*, 461 F.3d at 318.

Next, Holland contends that the district court erred in granting to the plaintiffs the right to construct docks and affix those docks to the seawall, which abuts Holland's property.  Even though the deeds were silent as to whether a dock-support easement was permitted, the district court found, properly applying New York case law, that the easements extended to any reasonable, lawful use contemplated by the grants.  *See, e.g.*, *Mohawk Paper Mills, Inc. v. Colaruotolo*, 256 A.D.2d 924, 925 (N.Y. App. Div. 1998) ("Where . . . the language of the grant contains no restrictions or qualifications and the purpose of the easement is to provide ingress and egress, any reasonable lawful use within the contemplation of the grant is permissible." (citation omitted)).  Then, based on testimony about past uses of the lake and the purpose of the various structures on the shorefront

6

property, the court found that the plaintiffs' proposals to construct docks and to use the seawall on Holland's railroad strip to secure and support those docks were permissible uses of the easements granted in the relevant deeds. *See, e.g.*, *Higgins v. Douglas*, 304 A.D.2d 1051, 1052-55 (N.Y. App. Div. 2003), *abrogated on other grounds by Town of North Elba v. Grimditch*, 98 A.D.3d 183 (N.Y. App. Div. 2012). The district court applied New York law correctly and provided adequate support for its multiple factual determinations, including for its finding that Holland's repairs made it more difficult for the plaintiffs to access the lake. Therefore, we affirm the district court's declaration permitting the docks and their supports.

Holland also asserts that we should reverse the district court's decision to grant the plaintiffs permission to bury one-inch pipes under their easements to extract water from Cayuga Lake. The district court did not err in finding that the relevant easements were not solely intended for ingress and egress or that Holland had failed to demonstrate how the installation of these pipes would cause any meaningful intrusion or burden. Therefore, it appropriately determined that installation of underground water pipes was a reasonable use of the easement. *See, e.g.*, *Phillips v. Iadarola*, 81 A.D.3d 1234, 1235 (N.Y. App. Div. 2011); *Albright v. Davey*, 68 A.D.3d 1490, 1492-93 (N.Y. App. Div. 2009). We also see no reason to disturb the district court's finding as to the need for pipes on the Zwigard property because the district court could have inferred such a need based on the Zwigards' request for underground pipes and the testimony of plaintiff John Place about his need for such pipes.

Finally, we affirm the decision to enjoin Holland from erecting a fence around the portion of the railroad strip adjacent to the plaintiffs' properties. To begin with, however, the district court incorrectly ruled that the Fort deed unambiguously prohibits Holland from constructing a fence.

7

That deed contains an affirmative covenant requiring the owner of the railroad strip to "make [and] ever maintain" fencing on the railroad strip whenever "required so to do" by Fort or his assigns. J.A. 134, 653. But this affirmative language does not necessarily carry the negative implication that Holland cannot, of her own accord, construct fencing. Nonetheless, the district court's decision to enjoin Holland from constructing a fence was not error. In its analysis of the land not covered by the Fort deed, the district court considered whether the grant of the easements to the water was consistent with fencing along the railroad strip based "upon the terms of the grant, the purposes for which it [was] made, the nature and situation of the property, and the manner in which it has been used." *Briggs v. Di Donna*, 176 A.D.2d 1105, 1107-08 (N.Y. App. Div. 1991) (internal quotation mark omitted). Its findings of fact about the past use of the land and its determination that the "erection of a fence in front of [plaintiffs'] lakefront parcels presents a safety hazard," were consistent with the record and applicable to both of the plaintiffs' properties. Special App'x at 222. As a result, the district court did not err in concluding that the erection of any barrier between the railroad strip and the plaintiffs' properties would be inconsistent with the purpose of their easements. That reasoning applies to the easements in both the Fort and the Mandell deeds. We therefore affirm the district court's decision to enjoin Holland from constructing a fence and to require her to remove the plastic construction fencing that currently surrounds the relevant portion of the railroad strip.

We have considered Holland's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8