■ Dwayne Maicus et al., Appellants, v Earl R. Maicus et al., Respondents. [66 NYS3d 557]—

---

Rose, J. Appeal from an order of the Supreme Court (Ryan, J.), entered June 21, 2016 in Clinton County, which, among other things, granted defendants' cross motion for partial summary judgment on their counterclaims.

Plaintiffs own a 14-acre parcel of real property and defendants own an adjoining 136-acre parcel, both of which are located in the Town of Black Brook, Clinton County. The parties' dispute centers on whether defendants possess a right-of-way over "two branch dirt roads" that travel across plaintiffs' property. The parties' trace the ownership of their adjoining properties back to John Smith, who acquired 150 acres of land in 1949 and then immediately entered into an unrecorded land contract with Scott Colby and Lila Colby to sell the entire 150-acre parcel to them. In 1950, the Colbys entered into another unrecorded land contract to sell their interest in 14 of those acres to Bernard Muzzy and Gloria Muzzy, plaintiffs' predecessors in interest.

The Colbys ultimately took title to the entire parcel in 1954, when Smith conveyed the 150 acres to them by deed. Immediately thereafter, the Colbys—having previously sold their interest in 14 of those acres to the Muzzys—conveyed the remaining 136 acres by deed to Robert Peck and Joseph VanValkenburg, defendants' predecessors in interest. The 1954 deed from the Colbys to Peck and VanValkenburg provided for the "grant" of a right-of-way by the Colbys to Peck and VanValkenburg "over the dirt road extending from the Plains Road, over and across" the 14-acre parcel sold to the Muzzys "as said road is now laid out" to a location "situated near the front of the [Muzzys'] house." This deed also granted "the right[-]of[-]way for ingress and egress over two branch dirt roads extending from the road located near the house northerly to the property herein sold." Significantly, the Colbys' 1954 deed to Peck and VanValkenburg further provided that this right-of-way was the same right-of-way that the Colbys had previously "reserved in the [1950] land contract" that they had entered into with the Muzzys.

In 1955, upon the Muzzys' completion of their land contract with the Colbys, the Colbys conveyed the 14-acre parcel to the Muzzys by deed. This 1955 deed, which conveyed the last of the 150-acre parcel originally owned by the Colbys, provided

that it was "reserving the right of ingress and egress over two branch dirt roads extending from the road located near the house northerly to the remaining property owned by the [Colbys]." This language reserving the right-of-way appears in every deed in plaintiffs' chain of title, including plaintiffs' own 2013 deed.

When defendants entered plaintiffs' property to improve one of the branch dirt roads, plaintiffs commenced this action for declaratory relief pursuant to RPAPL article 15, as well as for nuisance and trespass. Defendants answered and counterclaimed seeking, among other things, a declaration that they possess a right-of-way over the "two branch dirt roads." When plaintiffs moved to disqualify defendants' attorney, defendants cross-moved for partial summary judgment on their counterclaims. Ultimately, Supreme Court granted defendants' cross motion, finding that they possessed the right-of-way. As a result, the court dismissed plaintiffs' RPAPL article 15 and trespass causes of action. This appeal by plaintiffs ensued. We affirm.

Initially, we are unpersuaded by plaintiffs' contention that any right-of-way granted in the Colbys' 1954 deed to Peck and VanValkenburg was extinguished because that deed is not in plaintiffs' chain of title. Here, every deed in plaintiffs' chain of title dating back to the 1955 deed from the Colbys to the Muzzys reserves a right-of-way over "two branch dirt roads" on the 14-acre parcel now owned by plaintiffs. The deeds in plaintiffs' chain of title state that the right-of-way runs over the 14-acre parcel to "the remaining property owned by [the Colbys]." This language provided plaintiffs with actual, record notice that a right-of-way had been reserved by the Colbys and obligated plaintiffs to search the Colbys' chain of title in order to ascertain where the Colbys had conveyed out the remaining portion of the original 150-acre parcel (see Russell v Perrone, 301 AD2d 835, 836 [2003], amended 1 AD3d 789 [2003]; see generally Witter v Taggart, 78 NY2d 234, 239 [1991]; compare Puchalski v Wedemeyer, 185 AD2d 563, 566 [1992]). Such a search would have led them to the 1954 deed from the Colbys to Peck and VanValkenburg.

Plaintiffs next assert that the Colbys lacked the capacity to grant a valid right-of-way to Peck and VanValkenburg in 1954 because they had conveyed equitable title to the 14-acre parcel to the Muzzys in the 1950 land contract. According to plaintiffs, once the Colbys entered into the 1950 land contract, they became contract vendors and, as such, could not burden the 14-acre parcel by granting a perpetual easement to a third

party. Although plaintiffs correctly point out that a land contract vendee acquires equitable title and the contract vendor "holds the legal title in trust for the vendee" (*Bean v Walker*, 95 AD2d 70, 72 [1983]; *see Williams v Haddock*, 145 NY 144, 150 [1895]; *Romel v Reale*, 155 AD2d 747, 747-748 [1989]), we note that the 1954 deed to Peck and VanValkenburg expressly set forth that the right-of-way over the "two branch dirt roads" was "the same" right-of-way which the Colbys had previously reserved in the 1950 land contract entered into with the Muzzys. Furthermore, the parties do not dispute the existence of the 1950 land contract or that it existed with the language as reflected in the 1954 deed. In our view, although the 1950 land contract was unrecorded and does not appear in the record, this language in the 1954 deed is evidence of the language that was used in the 1950 land contract. Thus, as evidenced by the 1954 deed, when the Colbys entered into the land contract and transferred equitable title to the 14-acre parcel to the Muzzys in 1950, the Colbys reserved equitable title to the right-of-way to themselves. By doing so, we find that the Colbys were then able to grant the right-of-way to Peck and VanValkenburg in 1954 when they conveyed the 136-acre parcel to them by deed.* Accordingly, contrary to plaintiffs' contention, the Colbys created a valid right-of-way by grant in 1954.

We are also unpersuaded by plaintiffs' contention that the Colbys created an easement in gross or a license, as opposed to an easement appurtenant that runs with the land. It is well-settled that " 'whether an easement is appurtenant or merely a personal, noninheritable and nonassignable right depends upon the intent of the parties to the instrument in which the right-of-way was granted' " (*Webster v Ragona*, 7 AD3d 850, 853 [2004] [brackets omitted], quoting *Henry v Malen*, 263 AD2d 698, 702-703 [1999]). A review of the 1954 deed establishes that it is in writing, it is subscribed by the Colbys and it burdens the 14-acre servient parcel for the benefit of the 136-acre dominant parcel conveyed to Peck and VanValkenburg (*see Webster v Ragona*, 7 AD3d at 853; *Niceforo v Haeussler*, 276 AD2d 949, 950-951 [2000]). In light of this, coupled with the specific language used (*see Cronk v Tait*, 305 AD2d 947, 948-949 [2003]), we find that the Colbys intended to create an easement appurtenant.

The foregoing conclusion is not altered by the fact that the

---

* We reject plaintiffs' assertion that Real Property Law § 291 operates to render the Colbys' reservation in the 1950 land contract null and void. Here, reference to the 1950 land contract is made only to explain how equitable title to the right-of-way was reserved by the Colbys.

subsequent 1955 deed from the Colbys to the Muzzys described the reservation of the right-of-way as running to the Colbys "remaining property." According to plaintiffs, because the Colbys did not own any remaining property in 1955, they could not reserve a right-of-way benefitting the 136-acre dominant parcel. However, when we refer to the surrounding circumstances—including the undisputed existence of the 1950 land contract—to construe the reservation language reflected in the recorded deeds in plaintiffs' chain of title (*see Cronk v Tait*, 305 AD2d at 948-949; *Henry v Malen*, 263 AD2d at 703), the logical conclusion to be drawn is that the "remaining" property language merely reflects that the 1950 land contract between the Colbys and the Muzzys was entered into at a time when the Colbys did, in fact, have remaining property. Thus, in our view, the right-of-way reserved in the 1955 deed to the Muzzys was the same right-of-way previously reserved in their 1950 land contract, and the "remaining property" language in the deed was intended to speak as of the time of the 1950 land contract.

Finally, we are unpersuaded by plaintiffs' contention that defendants have failed to establish the location of the right-of-way described as "two branch dirt roads." The 1954 deed describes this location as "extending from the road located near the house northerly to the property herein sold." In our view, the location of the right-of-way cannot be clearly discerned from this language and, thus, it is proper to look to extrinsic evidence to determine the location (*see Finster Inc. v Albin*, 152 AD3d 922, 924-925 [2017]; *Leaman v McNamee*, 58 AD3d 918, 920 [2009]). After considering defendants' extrinsic evidence, including the historical aerial photographs, in conjunction with the description of the right-of-way in the 1954 deed, we agree with Supreme Court that defendants established, as a matter of law, that the two branch dirt roads start at the end of the road situated near the front of plaintiffs' house and extend to defendants' property as shown in the 1947 and 1964 aerial photographs. In opposition, plaintiffs' extrinsic evidence failed to raise an issue of fact concerning this location (*compare Finster Inc. v Albin*, 152 AD3d at 925; *Jordan v Vogel*, 59 AD3d 919, 920 [2009]).

Plaintiffs' remaining contentions, to the extent that they are properly preserved, have been reviewed and determined to be lacking in merit.

McCarthy, J.P., Egan Jr., Lynch and Rumsey, JJ., concur. Ordered that the order is affirmed, with costs.