GIDEON GRANGER et al., Appellants, *v.* THE CITY OF CANANDAIGUA, Respondent.

(Argued June 8, 1931; decided July 15, 1931.)

*Harry C. Miller* for appellants. The plaintiffs are the owners of the lands under the waters of Canandaigua lake. (*Oklahoma* v. *Texas*, 258 U. S. 574; *Hardin* v. *Jordan*, 140 U. S. 371; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Ledyard* v. *Ten Eyck*, 36 Barb. 102; *Stewart* v. *Turney*, 237 N. Y. 117; *Land & Lake Assn.* v. *Conklin*, 182 App. Div. 546; *Land & Lake Assn.* v. *Beardsley*, 182 App. Div. 550; *Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153; *Wilcox* v. *Bread*, 92 Hun, 9; 157 N. Y. 713; *Hazelton* v. *Webster*, 20 App. Div. 177; 161 N. Y. 628; *Deuterman* v. *Gainsborg*, 9 App. Div. 151; 54 App. Div. 575; 172 N. Y. 595; *Calkins* v. *Hart*, 219 N. Y. 145.)

*John Colmey* and *Fred D. Cribb* for respondent. Canandaigua lake is navigable in fact and does not come within the definition of small lakes or ponds and the rule of the latter does not apply to this body of water or the lands under the same. (*People* v. *Snyder*, 41 N. Y. 397; *Brown* v. *Scofield*, 8 Barb. 239; *Swinnerton* v. *Columbia Ins. Co.*, 37 N. Y. 164; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Ledyard* v. *Ten Eyck,*· 36 Barb. 102; *Land & Lake Assn.* v. *Conklin*, 182 App. Div. 546; *Commonwealth Water Co.* v. *Bruner*, 175 App. Div. 153; *Hazelton* v. *Webster*, 20 App. Div. 177; *Deuterman* v.

*Gainsborg,* 9 App. Div. 151; *Calkins* v. *Hart,* 219 N. Y. 145; *Smith* v. *City of Rochester,* 92 N. Y. 463.) Plaintiffs' alleged title to the lands under the waters of Canandaigua lake is traced through and based entirely upon the Hartford Treaty. Their title must stand or fall under the terms of this treaty. (*Commonwealth of Massachusetts* v. *State of New York,* 271 U. S. 65; *City of Geneva* v. *Hensen,* 140 App. Div. 49; *Seneca Nation* v. *Christy,* 126 N. Y. 122; *United States* v. *Holt State Bank,* 270 U. S. 49; *Wharton* v. *Wise,* 153 U. S. 155; *Buffalo & St. L. R. R. Co.* v. *Supervisors,* 48 N. Y. 93; *The Genesee Chief* v. *Fitzhugh,* 12 How. [U. S.] 443; *The Daniel Ball,* 10 Wall. [U. S.] 557; *Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343; *Techt* v. *Hughes,* 229 N. Y. 222.)

POUND, J. The question is as to the title of the bed of Canandaigua lake. If it is in the State, the judgment must be affirmed. If it is in the plaintiffs, defendant must be restrained from entering upon such lands and filling them in for park purposes.

Plaintiffs' title is based on a deed, conveying among other lands under the waters of fresh water inland lakes, all the lands lying under the waters of Canandaigua lake, executed by Stephen Bates, Sheriff of Ontario county, to Gideon Granger, their ancestor, dated June 10, 1817. The deed conveyed the interest of Oliver Phelps in such lands. He had acquired title from Phelps & Gorham who acquired title from the State of Massachusetts under the famous Treaty of Hartford (1786), so often referred to in judicial decisions (*People* v. *Snyder,* 41 N. Y. 397) and articles (Colson, " Title to Beds of Lakes in New York," 9 Cornell Law Quarterly, 159, 288), whereby Massachusetts ceded to New York sovereignty over its lands within the borders of New York and New York ceded to Massachusetts the right of pre-emption of the soil west of a line running north and south through Seneca lake. Title of the present owners to the land

here in question comes through the grant from New York to Massachusetts.

Canandaigua lake is navigable in fact. It has been regularly navigated by steamboats for commercial purposes. It is fifteen and six-tenths miles long and has an average width of slightly over one mile. It is surrounded by country homes and farms. It is and was a link in the chain of internal commerce. The city of Canandaigua is at its north extremity. Its outlet communicates with Clyde river, an affluent of the Seneca river.

The question of the title to the bed of fresh water lakes in New York State has frequently been before the courts. It "has never been determined." (*Stewart* v. *Turney*, 237 N. Y. 117, 123.) "Natural ponds and small lakes are private property. They pass by grant of land in which they are included." So said the court in *Gouverneur* v. *National Ice Co.* (134 N. Y. 355, 359), in holding that the riparian owners on Croton lake, covering about forty-five acres, owned to the center of the pond. "All rights of property to the soil under the waters of Hemlock lake [seven miles in length and one-half mile in width] were acquired by and belong to its riparian owners," said the court in *Smith* v. *City of Rochester* (92 N. Y. 463, 476) although steamboats plied on the lake, carrying passengers and freight. Ownership of the bed of the lake was unimportant. The decision was unnecessary but Judge RUGER entered into a long discussion to establish that title to the bed of the lake passed to Massachusetts under the Treaty of Hartford. In *Sweet* v. *City of Syracuse* (60 Hun, 28; revd., 129 N. Y. 316) the court declined to pass on the title to the bed of Skaneateles lake, fifteen miles long and about one mile wide. In *City of Geneva* v. *Henson* (195 N. Y. 447, 450) the court held that Seneca lake, 34.68 miles long and 3.46 miles wide, with one exception the largest lake wholly within the territorial limits of the State of New York, was navigable and navigated, but did not pass on the question of title to the bed of the

lake. (*City of Geneva* v. *Henson*, 202 N. Y. 545.) *Chism* v. *Smith* (138 App. Div. 715, 716; 210 N. Y. 198; 174 App. Div. 332, 334) left the question in doubt as to Lake George.

In *Stewart* v. *Turney* (*supra*) all these cases and others were reviewed. The case went far toward holding that the title to the bed of Cayuga lake, which is 38 miles long and from one to three miles wide, is in the State. The court pointed out (p. 124) that " where ·[the law] ·is unsettled the result of a proposed rule may turn the scale " and that " were it necessary we would hold, however, that with regard to a grant of land on Cayuga lake an exception ·should be made to the common-law rule " (p. 123) that the riparian owners owned to the center of the lake.

The author of this opinion (ANDREWS, J.), in an able article in 16 Cornell Law Quarterly, 277, to which reference is made, indicates a grouping of our navigable inland lakes into large and small and medium. Lakes George, Seneca, Cayuga, Oneida are large lakes; Croton and Hemlock are small. The title to the bed of the large lakes remains in the State; of the small lakes in private ownership. Between the two groups come lakes like Onondaga, Otsego and Canandaigua. Where shall we place them? It seems idle to refer for a comprehensive answer to the Hartford Treaty. The cession of ownership by New York to Massachusetts was equivalent to a grant to an individual. It conveyed no more than would a grant of private ownership. 'New York State sovereignty retained all its rights.

" The Treaty of Hartford * * * gave to New York, as incident to its sovereignty, title to all lands under navigable waters. * * * It would require clear and unequivocal language so to limit the obvious general purpose and effect of the grant." (*Massachusetts* v. *New York*, 271 U. S. 65, 90, 92.)

But the grant to Massachusetts must be construed by

reference to the law of New York. Navigability is not, as the decisions of the courts indicate, the determining test in all cases. A grant of land bordering on even a large stream carries title to the center of the stream unless the bed is excluded by the terms of the instrument (*Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178), and title to the bed of some of the smaller lakes, although navigable, has been held to be in the riparian owners. Nor is size alone to be considered. In Hemlock lake shape seems to have been a factor. It is long and narrow like a river.

The question becomes ultimately one of practical construction. Here the plaintiffs and their predecessors in title had not, for more than one hundred years, asserted title nor exercised any act of ownership over the bed of the lake until they brought this action. Canandaigua lake is large as lakes and ponds go. Windermere, the largest lake in England, is fourteen miles long and one mile broad. Canandaigua is navigable for commercial purposes. It is longer and wider than Hemlock. The question here is not one of riparian ownership. Plaintiffs claim title independently of the adjacent owners. To hold that the sovereignty had dedicated the bed of such a lake to private uses, subject to rights of navigation only, would be not only to deprive the public of access to the water for recreation and enjoyment but also to deprive the riparian owners of their customary privileges. The English test of public ownership by the ebb and flow of the tide, has long since been abandoned as inconsistent with physical conditions in this country and not practical as applied to such bodies of water as the Great Lakes. (*Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400, 412.) Except as applied to comparatively small and narrow bodies of water, resembling rivers, rather than lakes, it seems no less contrary to our institutions to say that our fresh water lakes are the subject of private ownership.

No more definite rule of general application may be stated and we pass only on the case before us. Conditions may alter cases but we hold that title to the bed of Canandaigua lake is in the State of New York in trust for all the people thereof.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.