*478
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Plaintiff-appellant, Douglaston Manor, Inc., owns approximately one-mile-long sections of both shorelines of the Salmon River in Oswego County and the riverbed in between. It traces its title back to a conveyance from the pristine State of New York in 1792. The issue is whether Douglaston’s ownership entitles it to exclude the public from fishing in, though not from navigating through, its portion of the river.
 

 Douglaston’s property encompasses the shoreline properties, the riverbed, and 10 islands within and along the Salmon River. It operates the Douglaston Salmon Run within its section of the river. Salmon Run is an exclusively managed private sport fishery from which the general public is excluded and for which users pay Douglaston a fee. Douglaston provides security for the property and has constructed support facilities for the benefit of its patrons, including a parking lot and stairways down to the river’s edge. It pays taxes upon the entire property, including riverbed land.
 

 This lawsuit stems from Douglaston’s desire to redress past trespasses (with compensatory and punitive damages) and to prevent (by injunction) defendants, commercial fishing guides, from future anchoring upon and fishing in Douglaston’s privately owned section of the Salmon River. The complaint alleges that defendants entered upon the river at a point upstream of Douglaston’s property, navigated into and within the Salmon Run, and anchored, waded and fished within Douglaston’s protected enclave. Douglaston asserts that it possesses
 
 exclusive
 
 fishing rights by virtue of its ownership of the bed and both banks of the river. Defendants counterclaim for nuisance and intentional interference with business relations,
 
 *479
 
 also seeking compensatory and punitive damages, and for a permanent injunction barring Douglaston from interfering with their claimed public right to fish anywhere on the river.
 

 Douglaston moved for partial summary judgment solely on its trespass claim. Defendants cross-moved for partial summary judgment to dismiss the complaint and for their injunction against Douglaston. Supreme Court held that defendants knowingly trespassed upon Douglaston’s property, granted its motion and scheduled an inquest on damages; the trial court denied defendants’ cross motion. Though the court found a public right of navigation because the Salmon River is a navigable-in-fact river, it held that navigation did not include a public right to fish and anchor.
 

 The Appellate Division modified by striking the critical trial court holding and denying Douglaston’s motion for summary judgment; instead, the Appellate Division granted defendants’ cross motion in part and dismissed the complaint in its entirety (218 AD2d 300). The Appellate Division held that the public has the right to fish, ferry and transport on the navigable waters of the Salmon River, including Douglaston’s Salmon Run section.
 

 We granted Douglaston leave to appeal. The order of the Appellate Division is brought to our review by a stipulation between the parties, treated as a final judgment, discontinuing all pending counterclaims. We now reverse and reinstate the ruling rendered by Supreme Court, because the settled law of New York continues to recognize the common-law distinction concerning the rights which a private owner may acquire and retain in nontidal, navigable-in-fact rivers and streams. These rights are distinguishable from public trust protections generally associated with waters deemed navigable-in-law or tidal navigable-in-fact waters, neither of which classification is before us in this case.
 

 Douglaston rests its claim of exclusive fishing rights solely on its record ownership of the bed and the banks of the Salmon River, derived from the State’s 1792 conveyance, classified as within the Macomb Patent. The defendants counter that because the Salmon River is navigable, the State irrevocably holds a public trust easement that protects anyone’s navigation of the river, which includes a right of public fishery. We must decide, therefore, whether New York State, under these circumstances, has the power to transfer exclusive fishing rights to private parties in a nontidal, navigable-in-fact river,
 
 *480
 
 as part of a conveyance of property ownership, and whether the State in fact did so in the 205-year-old Macomb Patent, derivatively at issue here.
 

 On this appeal, the parties do not dispute that the Salmon River is navigable. Their litigation positions differ, however, over what the key word connotes and what legal consequences flow from the applicable legal definition. The guides claim that the general classification of navigability alone defeats Douglas-ton’s claim to exclusive fishing rights. Their argument fails to credit the more nuanced concerns and complicated analysis pertaining to differences in private ownership rights between rivers navigable as a matter of common law and those navigable as a matter of fact, recognized for centuries as having distinct historical characteristics and legal consequences.
 

 A river is defined as "navigable in its natural or unimproved condition, affording a channel for useful commerce of a substantial and permanent character conducted in the customary mode of trade and travel on water * * * hav[ing] practical usefulness to the public as a
 
 highway for
 
 transportation” (Navigation Law § 2 [5] [emphasis added]). The common law more particularly distinguishes and "considers a river, in which the tide ebbs and flows, an arm of the sea, and as navigable, and devoted to the public use,
 
 for all purposes, as well for navigation as for fishing.
 
 It, also, considers other rivers, in which the tide does not ebb and flow, as navigable, but not so far belonging to the public as to divest the owners of the adjacent banks of their exclusive rights to the fisheries therein”
 
 (Hooker v Cummings,
 
 20 Johns 90, 100 [Sup Ct 1822 (emphasis added)];
 
 see, Hardin v Jordan,
 
 140 US 371, 383-384;
 
 see also, State of New York ex rel. New York State Dept. of Envtl. Conservation v Federal Energy Regulatory Commn.,
 
 954 F2d 56). A distinction has also been recognized between public trust interests, presumptively retained by the State in navigable-in-law and tidal waters, and navigational servitudes
 
 (compare, Trustees of Brookhaven v Strong,
 
 60 NY 56;
 
 see also, Langdon v Mayor of City of N. Y.,
 
 93 NY 129).
 

 The
 
 Hooker
 
 case acknowledged the key distinction by presuming the Salmon River was
 
 nonnavigable at common law
 
 because the tide did not ebb and flow in it. The court then held that the plaintiff could maintain an action in trespass against a defendant where plaintiff alleged that defendant fished in that portion of the river in which the plaintiff possessed riparian ownership rights including the exclusive right of fishery
 
 (Hooker v Cummings, supra,
 
 20 Johns, at 100). As to the
 
 *481
 
 discrete public right of navigation, the court noted that "in the case of a private river, * * * he who owns the soil has,
 
 prima facie,
 
 the right of fishing; * * * that the river was liable and subject to the public servitude,
 
 for the passage of boats;
 
 the private rights of the owners of the adjacent soil were no[t] otherwise affected, than by the river’s being subject to public use”
 
 (id.,
 
 at 99 [emphasis added]). While
 
 Hooker
 
 is not dispositive of the only issue we resolve as to this controversy, it nevertheless provides important guidance.
 

 A first premise for the analysis of this case is that this Court has long held that grants by the State to private owners of land under navigable-in-fact rivers remain subject to an implied, reserved public easement of navigation
 
 (see, Lewis Blue Point Oyster Cultivation Co. v Briggs,
 
 198 NY 287, 292-294,
 
 affd
 
 229 US 82;
 
 Sage v Mayor of City of N. Y.,
 
 154 NY 61, 79-81). Douglaston acknowledges as much, but adds, correctly in our view, that this limited easement extends only to the fulfillment of the proposition’s underlying purposes
 
 (see, Dalton v Levy,
 
 258 NY 161, 167). This Court more fully, elucidated the principle in
 
 Smith v Odell
 
 (234 NY 267):
 

 "[T]here is no necessary conflict between the reservation to the public of the right of navigation and the recognition of the exclusive privilege expressly granted to the owner. The public right, whatever it might otherwise be, must be held limited in such a situation to the right to use the waters for the purposes of a public highway. * * * [T]he
 
 easement of passage over navigable waters does not involve a surrender of other privileges
 
 which are capable of enjoyment without interference with the navigator”
 
 (id.,
 
 at 272 [citations omitted] [emphasis added];
 
 see also, Chenango Bridge Co. v Paige,
 
 83 NY 178, 184-185;
 
 Fulton Light, Heat & Power Co. v State of New York,
 
 200 NY 400, 418).
 

 Thus, this Court has maintained that the long-standing public easement of navigation in navigable-in-fact rivers does not sweep away or displace other rights accompanying the private ownership of the bed of a navigable-in-fact river, including that of exclusive fishery
 
 (Morgan v King,
 
 35 NY 454, 457-458;
 
 see generally,
 
 Humbach,
 
 Public Rights in the Navigable Streams of New York,
 
 6 Pace Envtl L Rev 461, 467-471).
 

 Defendants, instead, urge a definitive landmark ruling from this Court, through the instrumentality of this case, that New
 
 *482
 
 York State has abandoned the common-law property distinction between rivers navigable-in-fact and those navigable-in-law. As a result, they claim a public right of fishery in all "navigable” waters. This is not so and is too simplistic an approach, which would precipitate serious destabilizing effects on property ownership principles and precedents.
 

 In support of their proposition which defendants acknowledge is of first impression character, they draw on language in
 
 Smith v City of Rochester
 
 (92 NY 463) to the effect that the public interest in "fishing, ferrying and transportation, are preserved in
 
 all navigable
 
 waters” by the State
 
 (id.,
 
 at 480 [emphasis added]). The
 
 ratio decidendi
 
 of that case, however, does not support the destabilizing conclusion defendants promote from the dictum. The Court, in the portion of the discussion isolated by defendants, merely references adaptations of the common-law rule as to bodies of water such as the Hudson and Mohawk Rivers and sizeable freshwater lakes
 
 (id.,
 
 at 482;
 
 see, People ex rel. Loomis v Canal Appraisers,
 
 33 NY 461, 499-500;
 
 Canal Commrs. v People ex rel. Tibbits,
 
 5 Wend 423, 446-447;
 
 see also, Stewart v Turney,
 
 237 NY 117, 123-124;
 
 Granger v City of Canandaigua,
 
 257 NY 126, 129-130). The holding of the
 
 Smith
 
 case, however, is that the public right of navigation reserved to the State did not encompass the right to draw water from a lake to the detriment of riparian owners along an outlet creek
 
 (Smith v City of Rochester, supra,
 
 92 NY, at 483).
 

 A fortiori, and also overlooked by defendants, is another key ingredient and observation of the Court in
 
 Smith
 
 that the "preponderance of judicial authority in the State favors the application of the common-law rule to the navigable waters of this State. * * * These decisions show a course of authority extending from an early period of our history to the most recent times, and although they do not constitute an unbroken chain, yet they are fortified by a wealth of learning, reason and illustration that render them irresistible as authority”
 
 (id.,
 
 at 481;
 
 see also, Trustees of Brookhaven v Strong,
 
 60 NY 56, 66-67,
 
 supra).
 

 Importantly, New York State, as the original grantor of the Macomb Patent directly descending to the title involved in this case, has long respected private fishing rights in navigable-in-fact rivers and has even been engaged in purchasing precisely such rights for
 
 public
 
 benefit
 
 (see,
 
 1935 Opns Atty Gen 310; ECL 51-0701 [4]; 51-0703 [5] [1972 Environmental Quality Bond Act — Stream Rights Acquisition Project]). We see no reason in
 
 *483
 
 this circumstance to curtail the State’s general authority to convey property and property rights, nor to countenance the view that the State has been expending public moneys unnecessarily on rights, according to defendants’ theory, the State already irrevocably holds in public trust. Indeed, when pursuant to this Court’s precedents, the State, "the plaintiffs, and perhaps others, have since possessed and enjoyed rights of property under the protection of its authority, [] it would require a much plainer demonstration than can be made of the point involved, to justify this court in overruling [them]”
 
 (Trustees of Brookhaven v Strong, supra,
 
 60 NY, at 66). We similarly reject defendants’ unsettling theory.
 

 Next, though the guides concede Douglaston’s ownership of the riverbed and associated property as successors in title from the Macomb Patent, they assert that the conveyance neither expressly granted exclusive fishing rights nor relinquished the public right of fishery. This argument also fails to overcome settled law and principles. The Macomb Patent describes the transfer of certain real property from the State to Douglas-ton’s predecessor in interest. It encompasses the disputed portion of the Salmon River bank and bed "[t]ogether with all and singular Rights, Hereditaments and Appurtenances to the same belonging or in anywise appertaining: Excepting and Reserving to ourselves, all Gold and Silver Mines, and five acres of every Hundred Acres of the said Tract of Land for Highways.” This Court has previously held that when land under rivers is included within the boundaries of a grant, the general language of conveyance is sufficient to transfer to the grantee the bed of the river and associated exclusive right of fishery
 
 (Trustees of Brookhaven v Strong, supra,
 
 60 NY, at 71-72;
 
 see also,
 
 Humbach,
 
 op. cit.,
 
 at 533-542). Moreover, the State’s reservation of designated mineral rights and specific public rights of way, without reserving to the public a right of fishery, additionally supports our analysis and conclusion that Douglaston enjoys a duly conveyed exclusive right of fishery
 
 (see, Blackman v Striker,
 
 142 NY 555, 561).
 

 In sum, the desirable definiteness attendant upon discrete property rights and principles, along with reliable, predictable expectations built upon centuries of precedent, ought not be sacrificed to the vicissitudes of unsupportable legal theories.
 

 Accordingly, the order of the Appellate Division brought up for this Court’s review, through the stipulation by the parties deemed a final judgment, should be reversed, with costs, and the order of Supreme Court reinstated.
 

 
 *484
 
 Chief Judge Kaye and Judges Titonb, Smith, Levine, Ciparick and Wesley concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.