■ In the Matter of S.D. OFFICE EQUIPMENT COMPANY, INC., Appellant, v CHANNING PHILBRICK, as Supervisor of Town of Penfield, et al., Respondents. [668 NYS2d 426] —Judgment unanimously affirmed without costs. Memorandum: Petitioner owns and operates the Bounty Harbor Marina (Marina) in the Town of Penfield (Town). Its property consists of 14.7 acres of upland area and 10 areas of adjacent land under Irondequoit Bay (Bay). The Marina is located on the Bay offshore of petitioner's upland property. Petitioner also owns and operates a restaurant with parking facilities on the upland property.

In May 1985 the Penfield Zoning Board of Appeals (ZBA) granted petitioner's predecessor in title a conditional use permit for the construction and operation of 106 boat slips on the Bay. At that time, the property was designated on the Town's official Zoning Map as a "Neighborhood Business District". Although marinas were not on the list of permitted uses for that district, the ZBA issued the conditional use permit under a "catch all" provision in the Town of Penfield Zoning Ordinance (Zoning Ordinance), permitting uses other than those specifically listed upon a finding that the proposed use was appropriate and compatible with the purpose and intent of the district. In 1986 petitioner's predecessor in title was granted an expansion of the conditional use permit for a total of 186 boat slips. In granting the permit, the Town imposed the condition that "[n]o additional slips will be granted in conjunction with the restaurant use existing on this site".

In 1991 the Town adopted a Local Waterfront Revitalization Program (LWRP) to ensure responsible development of the Town's waterfront areas and to promote clean water quality and habitat. At the same time, the Town amended the Zoning Ordinance with respect to petitioner's property and designated that area on the Zoning Map as a "Waterfront Development District" (WDD). Marinas are not included in the permitted uses in the WDD, although there is a "catch all" provision permitting a non-listed use if it is compatible with the goals and policies of the LWRP and if respondent Penfield Town Board (Town Board) after a public hearing makes a consistency determination prior to approval of a special use permit (see, Zoning Ordinance § 3-91 [A] [9]).

On February 21, 1995, petitioner filed an application with the Town Board for a special use permit for 188 additional boat slips and 10,000 square feet of additional parking facilities. Thereafter, on June 27, 1995, petitioner submitted an application to respondent Harold Morehouse, the Town Building Officer, for a building permit to construct the additional boat slips. Because no action was taken on its application for the special use permit, petitioner, on May 31, 1995, commenced a CPLR article 78 proceeding against respondent Channing Philbrick, the Town Supervisor, to compel Philbrick to act on the application. By order dated August 25, 1995, Supreme Court directed that Philbrick submit petitioner's application to the Town Board for consideration.

By November 29, 1995, there still was no action taken on the application and, on November 30, 1995, petitioner commenced this CPLR article 78 proceeding seeking, inter alia, to hold Philbrick in contempt for failure to act on its application for a special use permit. Petitioner further sought a declaration that expansion of its dockage is not subject to the Zoning Ordinance because the location of the proposed docks is on submerged land that it owns and the Town Zoning Map designates that area as unzoned. Petitioner contended that the Town's refusal to grant a hearing was therefore "arbitrary, capricious, illegal and unreasonable".

In its answer, the Town asserted that it had sufficiently complied with the court's order by writing to petitioner on December 18, 1995, and informing it that the Town Board had considered its applications and denied them. The letter further stated that the Town Board would not hold further hearings because it had "previously legislatively determined that no further docks and/or marinas shall be permitted along the south end of Irondequoit Bay in Penfield". Petitioner's remedy, the

letter stated, would be to apply for a use variance in view of the Zoning Board's 1986 resolution that no additional boat slips would be granted on the site. In response, petitioner submitted an affidavit of one of its employees averring that he had reviewed the minutes of all Town Board meetings held between July 1, 1995 and December 31, 1995 and had found no record that petitioner's application had been discussed or even mentioned as an agenda item.

Supreme Court denied the petition in part, holding that the Zoning Ordinance applied to the construction of docks in the Bay, that the Town had acted appropriately in accordance with the court's order of August 25, 1995 and that petitioner is not entitled to a permit as a matter of law. The court also concluded that the LWRP "does not necessarily prohibit docks" and directed the Town to take action on the building permit "within the parameters" of the Zoning Ordinance. On July 14, 1996, petitioner appealed.

While this appeal was pending, the Town Board held a public hearing on July 23, 1997 regarding a proposed amendment of the Zoning Ordinance to change the zoning designation of the WDD to "LaSalle's Landing Development District" (LLDD) and, on September 3, 1997, the Town Board adopted the amendment. On October 1, 1997, the Town Board also adopted an amendment to the Town's Zoning Map, changing the area previously designated as WDD to LLDD and extending the LLDD into the Bay, including the area where petitioner is seeking to expand its dockage.

The court properly determined that the Town had authority under its Zoning Ordinance to regulate petitioner's construction of docks and boat slips (*see*, Navigation Law § 46-a [2]). Docks and boat slips are mere extensions of the land regulated by the Zoning Ordinance. "[M]unicipal zoning power extends to restriction of the use of the shoreline, such as the construction of docks in connection with marinas" (1 Anderson, New York Zoning Law and Practice § 9.07, at 402; *see, e.g., Matter of Haher's Sodus Point Bait Shop v Wigle*, 139 AD2d 950, *lv denied* 73 NY2d 701). Indeed, it is clear that the shoreline restrictions, which are included in the Zoning Map, include the construction of docks in the WDD. In any event, because petitioner is a past recipient of relief under the Zoning Ordinance, viz., permission to install 186 slips, it may not now be heard to complain that the ordinance does not apply to its present request to install an additional 180 slips.

More importantly, on October 1, 1997, the Town adopted an amendment to its Zoning Map that changed the area previ-

ously designated WDD to LLDD and unequivocally provided that the LLDD extended into the bay, including the area where petitioner sought to construct the slips. Because that amended ordinance "exists at the time a decision is rendered on appeal", it is controlling (*Matter of Buffolino v Board of Zoning & Appeals*, 230 AD2d 794). Therefore, petitioner's construction of the additional boat slips is subject to the amended Zoning Ordinance.

The record fails to support petitioner's contention that the amended Zoning Ordinance does not apply because the Town acted in bad faith in amending the Zoning Ordinance (*see, Matter of Property Developer v Swiatek*, 190 AD2d 1078, *lv denied* 82 NY2d 653; *Matter of Wiehe v Town of Babylon*, 169 AD2d 728, 729, *lv denied* 77 NY2d 809; *Matter of Aversano v Two Family Use Bd.*, 117 AD2d 665, 667; *see also, Matter of De Masco Scrap Iron & Metal Corp. v Zirk*, 62 AD2d 92, 98, *affd* 46 NY2d 864). Petitioner has not been singled out or treated unfairly in any way. Indeed, petitioner twice previously sought conditional use permits for the construction of additional boat slips and was granted permits for 186 slips. In granting the second permit, the Town imposed the condition that "[n]o additional slips will be granted in conjunction with the restaurant use existing on this site". Petitioner never challenged that condition.

Moreover, the Town did not delay action on petitioner's application for the purpose of amending the Zoning Ordinance, thereby exhibiting bad faith. To the contrary, the Town has always been consistent in its position, i.e., that the Zoning Ordinance applies and petitioner must obtain approval to construct additional slips. The fact that the Town, in light of petitioner's recent claim that the Zoning Ordinance did not apply, amended its ordinance to remove any question whether it applied to underwater lands does not constitute bad faith. Additionally, to date, petitioner has not obtained any vested rights to the additional 180 slips (*see, Matter of Steiner Fellowship Found. v De Luccia*, 90 NY2d 453).

We have reviewed petitioner's remaining contentions and conclude that they are without merit. (Appeal from Judgment of Supreme Court, Monroe County, Ark, J.—CPLR art 78.) Present—Lawton, J. P., Hayes, Wisner, Callahan and Boehm, JJ.