OPINION OF THE COURT
Judith A. Rossiter, J.
*231 Defendant is charged with violation of 9 NYCRR 400.6, unrestrained pet, for an incident that occurred on June 10, 2005. At the nonjury trial on September 29, 2005, the People, represented by City Prosecutor, Robert Sarachan, and the defendant, represented by Kristine Shaw of Ithaca, stipulated to the following facts.
“1. On or about June 10, 2005 Officer Fee was on duty in her capacity as a New York State Park Police Officer.
“2. At the aforementioned time, Officer Fee was patrolling Allan H. Treman Park and Marina, an area which is also known as Region 4 which is a New York State Park located within the City of Ithaca.
“3. At about 10:55 AM, Officer Fee observed the defendant, Stefan Prescott, with a dog.
“4. The dog with the defendant was the Defendant’s dog.
“5. The defendant’s dog is named Dexter and is a mixed breed dog, and is black and tan in color, approximately 60 pounds in weight. The defendant owns the dog and was responsible for the dog at the above place and time.
“6. At the time which Officer Fee observed the defendant and his dog, the dog was located in the water adjacent to the Allan H. Treman Marina. At the time the defendant was standing nearby on land right by the water where his dog was located.
“7. When Officer Fee observed the defendant’s dog it was not restrained by a leash, and was not in a cage.
“8. Based on Officer Fee’s observation of defendant’s unrestrained dog, Officer Fee approached the defendant and issued a ticket numbered 663690.
“9. Officer Fee issued the ticket based on the defendant’s failure to restrain his dog pursuant to 9 NYCRR 400.6 (a) (2).
“10. Officer Fee was able to identify the defendant with the cooperation of the defendant.”
The court adopts the parties’ stipulation as its findings of fact. The question before the court is whether 9 NYCRR 400.6 applies to dogs swimming in that portion of Cayuga Lake adjacent to the Allan H. Treman Park and Marina. Section 400.6 (a) (2) of title 9 of the Official Compilation of Codes, Rules, and Regulations of the State of New York provides as follows: “Do *232 mesticated household pets are allowed in the parks of the Fourth Region provided that: . . . the pet shall at all times be caged or restrained by a leash or other device not more than six feet in length” (emphasis added). This regulation was promulgated pursuant to the statute that created the Office of Parks, Recreation and Historic Preservation. It states that the Office “shall . . . [p]rovide for the health, safety and welfare of the public using facilities under its jurisdiction” (PRHPL 3.09 [5]). Also relevant to this case is the Office’s charge to “[ejncourage, promote and provide recreational opportunities for residents of urban as well as suburban and rural areas” (PRHPL 3.09 [10]). The Office of Parks, Recreation and Historic Preservation established a general policy pursuant to the PRHPL, recognizing many and sometimes conflicting demands on the State’s public parks, found at 9 NYCRR 370.1:
“(c) In addition to the dangers presented by natural hazards, the use of State parks and historic sites by the public for varied and divergent purposes may also, if not controlled, endanger the safety of members thereof and tend to deny certain individuals equality of opportunity in the use and enjoyment of these resources.
“(d) Therefore, to enhance and promote the safety, well-being and enjoyment of each individual in the use of the State park, recreational and historic site system, and to assure to each individual equality of opportunity in the use and enjoyment of such system, the rules and regulations set forth in this Chapter are hereby established to govern the conduct of the public with respect thereto.”
The facts in this case raise the following issue: Does park property extend to the waters of Cayuga Lake and therefore make 9 NYCRR 400.6 (a) (2) applicable to a dog owner whose pet is swimming in the lake?
New York is a riparian water rights state, which means that title to the bed of small fresh water ponds and lakes belongs to the adjacent landowner to the center of the lake (Barkus v Fusco, 199 AD2d 450 [2d Dept 1993]). Cayuga Lake, one of the Finger Lakes, however, is a navigable body of water. The question of ownership of a similar body of water was considered in 1931 in the case of Granger v City of Canandaigua (257 NY 126 [1931]). Title to the bed of Canandaigua Lake was at issue in that case, and the plaintiffs traced their claim to a deed that originated in *233 a grant from the Commonwealth of Massachusetts to private property owners under the Treaty of Hartford in 1876. The plaintiffs’ claim was independent of riparian ownership, as the plaintiff did not own the land adjacent to the lake bed. The Court of Appeals made a finding that Canandaigua Lake is navigable for commercial purposes. The Court then voided the deed, based on public policy: it held that to dedicate the lake bed to private use would “deprive the public of access to the water for recreation and enjoyment,” and also deprive the riparian owners of their customary privileges (id. at 131). The State was declared owner of the lake bed. The Court also noted that in a prior case, Stewart v Turney (237 NY 117 [1923]), the Court of Appeals had held that, because of Cayuga Lake’s size, “an exception should be made to the common-law rule that riparian owners owned to the center of the lake” (Granger, supra at 130 [internal quotation marks omitted]). Under either theory, riparian or navigable water, the State appears to be the owner, here, of the section of lake bed in question. Both the state and local governments have the power to regulate and control the navigable water under their respective control (People v Amerada Hess Corp., 84 Misc 2d 1036 [Crim Ct, Bronx County 1975]). Navigation Law § 30 provides that the Commissioner of the Department of Environmental Conservation (DEC) has “jurisdiction over navigation on the navigable waters of the state.” (Navigation Law § 30.) The cases interpreting regulation of navigable waterways for the most part involve the intersection of the DEC and local governments, where the local government has attempted to regulate navigation over navigable water. The court was unable to find any case law involving another branch of the state government’s attempt to regulate either navigation or some other aspect of navigable water. In People v Wechsler (79 Misc 2d 103 [9th & 10th Jud Dists 1974]), the court held that the Town of North Hempstead could regulate water skiing within Hempstead Harbor because that body of water was specifically exempted from section 30 of the Navigation Law. The Attorney General has issued several opinions maintaining that the “State . . . specifically, the Commissioner of Environmental Conservation” has jurisdiction over New York’s navigable water (1984 Ops Atty Gen No. I 84-53; 1994 Ops Atty Gen No. F 94-7). The jurisdiction of the Commissioner is considered by the State to be exclusive unless there is a provision of the Navigation Law specifically authorizing another state agency or legislative body to adopt regulations concerning navigable water (1994 Ops Atty *234 Gen No. F. 94-7; 1994 Ops Atty Gen No. 194-26). The Legislature has given the Office of Parks, Recreation and Historic Preservation special powers to regulate recreation on all of its “lands,” defined to include “lands under water and riparian rights,” but has not specifically extended the definition to include lands under navigable water (PRHPL 1.03 [11]). The Office of Parks, Recreation and Historic Preservation has also been specifically authorized to regulate water sports upon any waters under the jurisdiction of the office (PRHPL 13.13). There is no specific legislative authority to regulate navigable waters abutting New York State parks. Furthermore, there is no statutory language that the rules that govern the park itself also apply to navigable waters adjacent thereto. In fact, the navigable waters designation of Cayuga Lake means that the state park lands do not extend beyond the shoreline of the lake.
Although the State of New York owns both the state park land and the bottom of Cayuga Lake, in the absence of any statute that either bars dogs from swimming in Cayuga Lake or from swimming in Cayuga Lake without a leash, the court cannot extend the rules that apply to the park land out to the navigable waters that are not part of the park land. This decision applies only to the navigable waters and should not be constrained to mean that the regulation that dogs remain on a leash on park land are in any way diminished. In view of the foregoing, the court finds defendant not guilty.