OPINION OF THE COURT
Rose, J.P.
In a race to beat the impending effective date of regulations recently issued by the Adirondack Park Agency, defendant William H. Grimditch Jr. (hereinafter Grimditch) began construction of a boathouse in the waters of Lake Placid adjacent to his lakefront property without applying to plaintiff Town of North Elba for a building permit. As a consequence, plaintiff James E. Morganson, the Code Enforcement Officer for the Town of North Elba/Village of Lake Placid, issued a stop work order and the Town and Morganson (hereinafter collectively referred to as the Town) then moved for a preliminary injunction preventing further construction. After making the motion, the Town learned that Grimditch’s children, defendants Wayne H. Grim-ditch and Carol Lynn Grimditch Roda (hereinafter collectively referred to as the children), had commenced construction of a second unpermitted boathouse adjacent to their nearby, separate parcel of lakefront property, and the parties agreed that both boathouses would be considered as part of the pending motion.
Supreme Court allowed construction of both boathouses to continue to the extent of installing piers and decking, but issued a limited preliminary injunction that required defendants to apply for building permits pursuant to the New York State Uniform Fire Prevention and Building Code Act (hereinafter SBC) and to comply with the applicable Village of Lake Placid/ Town of North Elba Land Use Code (hereinafter LUC).[1] The Town then commenced action No. 1 against defendants seeking, among other things, a permanent injunction on the ground that the boathouses were in violation of the LUC. Defendants counterclaimed for a declaration that Navigation Law § 30 preempts the Town’s enforcement of the LUC, making it inapplicable to any construction in the waters of Lake Placid. In support of their position, defendants relied upon Higgins v Douglas (304 AD2d 1051 [2003]), in which we held that Lake Placid, as navigable water, is not subject to the LUC. Defendants also claimed that they did not need a building permit because the *186 boathouses were not buildings as defined by the SBC. Supreme Court later vacated the preliminary injunction,[2] defendants completed construction of the boathouses and the parties cross-moved for summary judgment.
While the cross motions for summary judgment were pending in action No. 1, plaintiffs John M. McMillin III, Ellen M. McMillin, Richard Moccia and Leslie Moccia (hereinafter collectively referred to as the neighbors) moved to intervene in that action on the ground that, as owners of property adjoining the children’s parcel, they would be harmed by the allegedly illegal boathouse being constructed there. Supreme Court denied the motion to intervene,[3] and the neighbors commenced action No. 2 against the children seeking a permanent injunction and removal of their boathouse. After joinder of issue, the neighbors moved for a preliminary injunction and the children cross-moved for dismissal of the action against them.
Ultimately, Supreme Court granted summary judgment to defendants dismissing both actions. Based on our decisions in Higgins and Mohawk Val. Ski Club v Town of Duanesburg (304 AD2d 881 [2003]), the court reasoned that Lake Placid meets the definition of “[n]avigable waters of the state” as set forth in Navigation Law § 2 (4), which, in pertinent part, defines that phrase as “all lakes, rivers, streams and waters within the boundaries of the state and not privately owned, which are navigable in fact.” Based on the lack of any dispute as to whether Lake Placid is navigable in fact (see Navigation Law § 2 [5]), Supreme Court focused its analysis on whether the lake is privately owned. In doing so, it rejected the Town’s argument that the State gave up ownership of the lake as part of the Ma-comb Patent and concluded that, despite the private ownership of almost 300 homes or camps on its shores, it need not determine whether title to the lake bed is in the riparian owners.[4] Instead, the court held that the waters of the lake were “not privately owned” within the meaning of the statutory definition because of the State’s ownership of a public boat launch *187 ing site and the northeast portion of the lake. As a result, the court concluded that Lake Placid met the definition set forth in Navigation Law § 2 (4) and, therefore, Navigation Law §§ 30 and 32 applied, conferring exclusive jurisdiction over structures in the lake upon the State. Accordingly, Supreme Court declared that the LUC did not apply to the construction of defendants’ boathouses. Taking note, however, of our more recent decision in Beneke v Town of Santa Clara (36 AD3d 1195 [2007], lv dismissed 8 NY3d 938 [2007]), the court also held that defendants’ boathouses were buildings subject to the SBC (see id. at 1198). The court then separated the Town’s administration and enforcement of the SBC from the LUC and found that Morgan-son’s requirement that defendants comply with the LUC constituted a failure to perform his duties under the SBC. The court declared that the boathouses complied with the SBC and ordered the Town to issue building permits. The court also ordered a hearing on sanctions against the Town for, among other things, pursuing this action. The Town and the neighbors now appeal.
We agree with Supreme Court that Lake Placid was not part of the Macomb Patent and that the Navigation Law is applicable to the lake. We also agree that defendants’ boathouses are structures subject to the SBC. Nevertheless, we cannot agree that the Navigation Law preempts the power of local municipalities to administer and enforce local land use laws by conferring upon the State exclusive jurisdiction over structures in the navigable waters of the state. Only when the State owns title to the land under the water in its sovereign capacity does it have exclusive jurisdiction preempting local land use laws. Based on development of English common-law principles regarding the ownership of submerged land in New York, we conclude that Lake Placid is not owned by the State in its sovereign capacity. In the absence of any such exclusive authority conferred by either the Navigation Law or sovereign title to Lake Placid, we now hold that the LUC is applicable to the construction of defendants’ boathouses. Our conclusions require us to revisit our decisions in Higgins and Mohawk Val. Ski Club and, to the extent that they hold that the Navigation Law provides the State with exclusive jurisdiction over structures located in its navigable waters, no longer follow them.
*188 I
We begin with the rule that where the State holds title to the land under navigable water in its sovereign capacity, its paramount authority “is not limited to regulation in the interest of navigation but extends to every form of regulation in the public interest” (People v System Props., Inc., 281 App Div 433, 440 [1953], mod on other grounds 2 NY2d 330 [1957]; see Langdon v Mayor of City of N.Y., 93 NY 129, 155-156 [1883]; Erbsland v Vecchiolla, 35 AD2d 564, 565 [1970], affd sub nom. Erbsland v Rubin, 33 NY2d 787 [1973]). The State’s sovereign ownership of land under water has its origins in English common law, pursuant to which tidal waters were considered “navigable,” with the land under such waters owned by the Crown (see PPL Montana, LLC v Montana, 565 US —, —, 132 S Ct 1215, 1226-1227 [2012]; Langdon v Mayor of City of NY., 93 NY at 155-156). Under this framework, nontidal waters were considered “nonnavigable,” with title to the land under them being held by the adjacent riparian owners (see PPL Montana, LLC v Montana, 565 US at —, 132 S Ct at 1227; Fulton Light, Heat & Power Co. v State of New York, 200 NY 400, 412 [1911]). This distinction between tidal and nontidal waters was determined to be impractical in New York given the abundance of inland lakes and streams and, as a result, our common law has developed such that the State owns, in its sovereign capacity, the land under tidal waters, boundary waters, the Hudson and Mohawk Rivers and certain major inland lakes, based on their size, character and history (see Illinois Central R. Co. v Illinois, 146 US 387, 435 [1892]; Hardin v Jordan, 140 US 371, 382-384, 393-394 [1891]; Macrum v Hawkins, 261 NY 193, 203 [1933]; Granger v City of Canandaigua, 257 NY 126, 131-132 [1931]; Fulton Light, Heat & Power Co. v State of New York, 200 NY at 412-414; Saunders v New York Cent. & Hudson Riv. R.R. Co., 144 NY 75, 85-86 [1894]; 1 Rasch, New York Law and Practice of Real Property §§ 20:34, 20:35 [2d ed 1991]; 107 NY Jur 2d, Water § 15).
Accordingly, the State’s sovereign ownership includes the land under the “marginal sea” to a line three miles from the coast, the Great Lakes within the State’s territorial jurisdiction, Lake Champlain and the St. Lawrence and Niagara Rivers (see State Law § 7-a; Public Authorities Law § 1001; Matter of Long Sault Dev. Co. v Kennedy, 212 NY 1, 9-10 [1914]; Matter of Haher’s Sodus Point Bait Shop v Wigle, 139 AD2d 950, 950 [1988], lv denied 73 NY2d 701 [1988]; Moore v Day, 199 App *189 Div 76, 78-79 [1921], affd 235 NY 554 [1923]; Niagara County Irrigation & Water Supply Co. v College Hgts. Land Co., 111 App Div 770, 772 [1906]), as well as the Hudson and Mohawk Rivers (see Fulton Light, Heat & Power Co. v State of New York, 200 NY at 413; Waterford Elec. Light, Heat & Power Co. v State of New York, 208 App Div 273, 281-282 [1924], affd 239 NY 629 [1925]; 1 Rasch, New York Law and Practice of Real Property § 20:35 [2d ed 1991]). The major inland lakes that have been judicially recognized as being owned by the State in its sovereign capacity include Lake George (see People v System Props., 2 NY2d at 344-345), Cayuga Lake (see Stewart v Turney, 237 NY 117, 123 [1923]; New York State Water Resources Commn. v Liberman, 37 AD2d 484, 488 [1971], appeal dismissed 30 NY2d 516 [1972]), Canandaigua Lake (see Granger v City of Canandaigua, 257 NY at 132), Oneida Lake (see Roth v State of New York, 262 App Div 370, 371 [1941]), and Keuka Lake (see Rogers v South Slope Holding Corp., 172 Misc 2d 33, 36-37 [1997], mod 255 AD2d 898 [1998]). This list is by no means exhaustive and the test for determining whether an inland lake is owned by the State in its sovereign capacity is a practical one (see Granger v City of Canandaigua, 257 NY at 131).
We must make this determination regarding Lake Placid because, as a general principle, local zoning codes do not apply to the lands of the State (see 2 Salkin, New York Zoning Law and Practice § 11:06 [4th ed 2011]). This includes “navigable waters” when the phrase is used in the common-law sense that the State holds “title to the land thereunder” (Erbsland v Vecchiolla, 35 AD2d at 565 [Milton Harbor, part of Long Island Sound]; see Town of Alexandria v MacKnight, 281 AD2d 945, 945 [2001] [St. Lawrence River]; Britt v Zoning Bd. of Appeals of Town of Grand Is., 124 AD2d 987, 987 [1986] [Niagara River]; see also 1 Salkin, New York Zoning Law and Practice § 7:07 [4th ed 2011]). This common-law meaning of “navigable waters” reflects the State’s sovereign ownership of the land under water, as opposed to its proprietary ownership as a riparian owner. When the land under water is owned by the riparian owners, an inland river is “nonnavigable at common law” even though it may be considered “navigable in fact” in terms of its ability to support transportation (Douglaston Manor v Bahrakis, 89 NY2d 472, 480 [1997] [emphasis omitted]). In Douglaston Manor, the Court of Appeals specifically declined to abandon these common-law distinctions regarding navigability (id. at 481-482), and the State’s sovereign ownership of land under tidal waters, the *190 Great Lakes, boundary rivers and other major inland lakes and rivers, as developed in the common law, should not be used interchangeably with the Navigation Law definition of “navigable waters of the state.” The Navigation Law definition is limited to its use in that statute and does not otherwise define the State’s powers (see Navigation Law § 2; People v System Props., Inc., 281 App Div at 443; 1 Rasch, New York Law and Practice of Real Property § 20:33 [2d ed 1991]; 107 NY Jur 2d, Water §81).
Although Supreme Court construed Erbsland, Britt and MacKnight as holding that municipalities have no authority over navigable waters as defined in the Navigation Law, these cases do not support that conclusion. Instead, each involves an attempt by a municipality to enforce zoning restrictions on waters owned by the State in its sovereign capacity. Erbsland held that the zoning power of the City of Rye did not extend into the “navigable waters of Milton Harbor” because those waters are within the sole jurisdiction of the State (Erbsland v Vecchiolla, 35 AD2d at 565). The decision made no reference to the Navigation Law. Instead, it pointed out that the State had title to the land under the body of water known as Milton Harbor, which, we note, is tidal water owned by the State in its sovereign capacity. In Britt, the Court noted that the Zoning Board of Appeals of the Town of Grand Island had no authority over construction on navigable waters of the state (see Britt v Zoning Bd. of Appeals of Town of Grand Is., 124 AD2d at 987). While Britt uses the phrase “navigable waters of the [s]tate,” it does so without reference to the Navigation Law and, as is clear from the location of Grand Island and the underlying litigation documents included in the record, the navigable water of the state at issue was the Niagara River, a boundary river owned by the State in its sovereign capacity (see id.). MacKnight, relying on Erbsland and Britt, likewise held that the Town of Alexandria had no authority to regulate construction of a dock system in navigable waters of the state (see Town of Alexandria v MacKnight, 281 AD2d at 945). As made clear, however, by the location of Alexandria and the underlying litigation documents included in the record, the navigable water at issue was the St. Lawrence River, a boundary river owned by the State in its sovereign capacity. In our view, neither Erbsland, Britt nor MacKnight stand for the proposition that the Navigation Law preempts local zoning regulations. Instead, we read them to more accurately reflect that preemption occurs when the State owns the land under navigable water in its sovereign capacity.
*191 The Town argues that the State does not own the bed of Lake Placid in its sovereign capacity, contending instead that it conveyed its sovereign title as part of the Macomb Patent in 1792. In support of its argument, the Town submitted a copy of the Macomb Patent and also offered a 2005 letter from an Office of General Services (hereinafter OGS) Submerged Lands and Natural Resources Manager stating, among other things, that Lake Placid was included within the bounds of the patent.[5] We cannot agree, however, that there is anything in the description of the 1,920,000 acres conveyed to Alexander Macomb which would allow for a conclusion that Lake Placid was included within it. Further, the 2005 OGS letter relied on by the Town sets forth no basis for the contention that Lake Placid was part of the patent, and that contention is contradicted by the language of the parties’ deeds, as well as the description of the eastern boundary line of the Macomb Patent provided in People v Tahawus Purchase, Inc. (26 NYS2d 795 [1940], affd 268 App Div 100 [1944]). The parties’ deeds in the record all indicate that they are part of “Lot No. 315 township No. 11, Old Military Tract, Richards Survey.”[6] People v Tahawus Purchase, Inc. (supra) contains detailed descriptions, with drawings, of surveys conducted in the region by Richards and others, and it reflects that the eastern boundary of the Macomb Patent is the western boundary of the Old Military Tract (People v Tahawus Purchase, Inc., 26 NYS2d at 798-803). This information, considered in conjunction with the deeds and the maps of the properties contained in the record, makes clear that defendants’ properties are located on the eastern shore of Lake Placid, which is in the Old Military Tract and well to the east of the lands later granted as part of the Macomb Patent. Accordingly, there is no basis for the Town’s contention that the State conveyed sovereign ownership of the lake.
Nevertheless, we must agree with the Town that the State does not own Lake Placid in its sovereign capacity. The application to Lake Placid of our common-law principles governing ownership of inland lakes and rivers requires the conclusion that title to the bed of the lake is held by the riparian owners. As a general rule, nontidal waters, with the exception of those *192 that courts have deemed to be owned by the State in its sovereign capacity, are owned in a proprietary capacity by the riparian owners, whether such owners be the State, individuals or other entities (see 1 Rasch, New York Law and Practice of Real Property § 20:35 [2d ed 1991]). Title to the beds of these smaller and less important bodies of water passes into private ownership with a grant of riparian land, absent an express reservation (see Stewart v Turney, 237 NY at 123; see also Douglaston Manor v Bahrakis, 89 NY2d at 483; Chenango Bridge Co. v Paige, 83 NY 178, 185 [1880]; 1 Rasch, New York Law and Practice of Real Property § 17:20 [2d ed 1991]). Applying this rule to Lake Placid, a nontidal, inland lake, the riparian owners have title to the bed of the lake. This is reflected in the deeds of the parties in the record, which grant title to the land under water and describe their ownership as being between their boundary lines extending westerly towards the center of the lake. Therefore, while the State may hold proprietary title to portions of the lake bed based on its ownership of riparian property on the lake, it does not own Lake Placid in a sovereign capacity and, accordingly, does not have “absolute control” over the lake (Langdon v Mayor of City of N.Y., 93 NY at 155; see People v System Props., Inc., 281 App Div at 440).
This conclusion finds further support in the Guide to Underwater Lands published by OGS and included by the Town as an appendix to its brief. The Guide lists “coastal waters, major lakes and rivers” that OGS considers to be owned by the State in its sovereign capacity so as to require — subject to certain exemptions — an easement, license or lease in order for upland owners to construct a dock, bulkhead, pier, jetty, boathouse or other improvement (see Public Lands Law § 75 [7] [b]). Lake Placid is not on the list of underwater lands that OGS considers to be subject to its jurisdiction.
II
In light of our conclusion that the State does not own Lake Placid in it sovereign capacity so as to give it exclusive jurisdiction over “every form of regulation [of the lake] in the public interest” (People v System Props., Inc., 281 App Div at 440), we turn to examine Supreme Court’s holding that the Navigation Law is the source of exclusive jurisdiction preempting local authority. Supreme Court concluded that Lake Placid qualifies as “[n]avigable waters of the state” as defined in Navigation Law § 2 (4) and that, as a result, Navigation Law *193 §§ 30 and 32 govern the construction of defendants’ boathouses to the exclusion of the LUC. Supreme Court based its conclusion that Lake Placid is within the Navigation Law definition of navigable waters of the state on the undisputed facts that the lake is accessible to the public and used for transportation, thus making it “not privately owned” and “navigable in fact” (Navigation Law § 2 [4], [5]). The Town and neighbors, on the other hand, contend that the Navigation Law only applies to publicly owned waters and, given the ownership of the lake bed by the riparian owners, does not apply to Lake Placid. While we agree with Supreme Court’s finding that the Navigation Law applies to Lake Placid,[7] we are not persuaded that any of the statute’s provisions give the State exclusive jurisdiction over structures located in the lake so as to preempt the application of the Town’s zoning restrictions to defendants’ boathouses.
By its terms, the Navigation Law applies “to navigation and the use of navigable waters of the state” (Navigation Law § 1). In contrast, as we have said, when the State owns the land under a body of water in its sovereign capacity, “[t]he sovereign power of the State is not limited to regulation in the interest of navigation but extends to every form of regulation in the public interest” (People v System Props., Inc., 281 App Div at 440). A review of Navigation Law §§ 30 and 32 reveals no express provision conferring exclusive jurisdiction over every form of regulation to the State. Rather, these sections are directed to maintaining the ability of the public to navigate or pass over the navigable waters of the state as defined by the Navigation Law. While Navigation Law § 2 (2) and § 30 give the Commissioner of Environmental Conservation jurisdiction “over navigation on the navigable waters of the state” in the region where Lake Placid is located, section 30 explicitly provides that “nothing authorized hereunder shall be construed to . . . authorize . . . any infringement of . . . local laws or regulations” (Navigation Law § 30). Thus, by its plain language, Navigation Law § 30 applies only to navigation and does not infringe upon the application of the LUC to structures built upon the waters of Lake Placid.
*194 An examination of Navigation Law § 32 likewise reveals that, contrary to Supreme Court’s conclusion, it is not an exclusive statute controlling the placement of docks and other similar structures in the navigable waters of the state, again as defined by the Navigation Law. Nor is it, in its current form, a permitting statute. Rather, it was enacted in 1990 to provide for an administrative remedy under the auspices of the Commissioner of General Services if a structure placed in navigable waters of the state should interfere with “free and direct access” to the water from any other person’s property, wharf, dock or similar structure (Navigation Law § 32 [1], [2]; see L 1990, ch 491; Memorandum of Senator Jess J. Present, 1990 NY Legis Ann, at 254; 9 NYCRR part 274). Consistent with the limitation contained in Navigation Law § 30, we do not consider Navigation Law § 32 to infringe upon the Town’s use of the LUC to regulate the construction of boathouses on the lake.
Nor does Navigation Law § 46 or § 46-a compel a different conclusion. Navigation Law § 46 allows local municipalities to regulate the use of a lake or other body of water within the municipality by setting speed limits for vessels or prohibiting personal watercraft within a designated “vessel regulation zone” (Navigation Law § 46 [1], [3]; see Town Law § 130 [17]). Navigation Law § 46-a, entitled “Regulation of vessels,” authorizes a city or village to adopt regulations concerning the speed, anchoring and removal of garbage from vessels on waters within or bordering the city or village to a distance of 1,500 feet from shore (see Navigation Law § 46-a [1]). The remaining subdivisions allow local legislative bodies in certain specified municipalities to regulate the manner of construction and location of boathouses, moorings and docks (see Navigation Law § 46-a [2], [4], [5], [6]; see also Navigation Law § 32-e). Our review of the record and case law reveals that these subdivisions are delegations of authority to municipalities that border waters owned by the State in its sovereign capacity, such as tidal waters, boundary waters, the Hudson River and the major inland lakes that we have previously discussed (see Navigation Law § 46-a [2], [4], [5], [6]). Accordingly, Navigation Law §§ 46 and 46-a are merely examples of the State’s delegation of its authority over its land under water held in its sovereign capacity and the regulation of vessels as provided in the Navigation Law (see e.g. Matter of S.D. Off. Equip. Co. v Philbrick, 247 AD2d 838, 840 [1998]; Matter of Haher’s Sodus Point Bait Shop v Wigle, 139 AD2d at 951).
*195 Given the State’s statutory exercise of authority over the regulation of vessels, municipalities would have no authority to do so absent the delegations of that authority in Navigation Law §§ 46 and 46-a (see generally Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 [1989]; Matter of Ames v Smoot, 98 AD2d 216, 217 [1983], appeal dismissed 62 NY2d 804 [1984]; see also NY Const, art IX, § 2 [e]; Municipal Home Rule Law § 10). Similarly, absent the delegations in Navigation Law § 46-a allowing local municipalities to regulate the manner of construction and location of structures in waters owned by the State in its sovereign capacity, municipalities bordering or encompassing such waters would have no authority to issue such regulations (see Langdon v Mayor of City of N.Y., 93 NY at 155; Erbsland v Vecchiolla, 35 AD2d at 565). Further, inasmuch as Navigation Law § 46-a contains no express restriction on the exercise of this authority by municipalities in waters such as Lake Placid that are not owned by the State in its sovereign capacity, the LUC is neither inconsistent with this section nor preempted by it. Moreover, defendants do not dispute that the Town has been delegated this authority generally within its boundaries (see Town Law § 261; Statute of Local Governments § 10 [6]; Municipal Home Rule Law § 10; 1 Salkin, New York Zoning Law and Practice §§ 2:03, 2:04, 2:08 [4th ed 2011]). As Lake Placid is not owned by the State in its sovereign capacity and most of the lake is within the Town’s boundaries, the Town’s zoning authority includes that portion of the lake, making the LUC applicable to structures constructed therein.
III
We readily acknowledge that Supreme Court’s conclusion regarding the exclusivity of the Navigation Law was based in part on our decisions in Mohawk Val. Ski Club v Town of Duanesburg (304 AD2d 881 [2003], supra) and Higgins v Douglas (304 AD2d 1051 [2003], supra). To the extent that those decisions may suggest that the Navigation Law displaces local land use laws on navigable waters that are not owned by the State in its sovereign capacity, those cases should no longer be followed.
IV
Based on the foregoing, the Town and neighbors correctly assert that Supreme Court erred in declaring that defendants’ boathouses are not subject to the LUC, and defendants’ cross motions for summary judgment dismissing action Nos. 1 and 2 *196 should not have been granted. Supreme Court, having erroneously determined that the Town did not have jurisdiction, did not consider the merits of the Town’s motion for summary judgment in action No. 1 or the neighbors’ request for a preliminary injunction in action No. 2, and we remit for that purpose.
Our conclusion also renders the order for a hearing on sanctions against the Town in action No. 1 inappropriate. Supreme Court ordered the hearing to determine whether the Town’s arguments were completely without merit, whether it engaged in actions primarily to delay and prolong the litigation and whether it asserted material factual statements in the verified complaint against Grimditch that were false. Clearly, the Town’s arguments regarding the application of the LUC had merit and their actions were designed to enforce the LUC, not delay the action. With respect to the false statements, the Town alleged in the complaint that Grimditch had not applied for a building permit. While he had applied by the time the summons and complaint were filed, the allegations in the complaint were limited to the specific time frame prior to the applications and were true as of that date, notwithstanding later developments. Accordingly, we find no basis for sanctions against the Town.
Malone Jr., Stein, McCarthy and Egan Jr., JJ., concur.
Ordered that the order and judgment entered August 24, 2011 in action No. 1 is modified, on the law, without costs, by reversing so much thereof as granted defendants’ cross motion for summary judgment and as ordered a hearing on sanctions against plaintiffs; cross motion denied and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.
Ordered that the order entered August 24, 2011 in action No. 2 is modified, on the law, without costs, by reversing so much thereof as granted defendants’ cross motion for summary judgment; cross motion denied and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. Pursuant to Executive Law § 371 (2) (d) and § 381 (2), the SBC is administered and enforced by local governments absent local legislation opting out of such enforcement. Accordingly, in the Town of North Elba, where defendants’ properties are located, the LUC provides the means by which the SBC is administered and enforced.

. The Town’s appeals from the preliminary injunction and the order vacating it are decided herewith (Town of North Elba v Grimditch, 96 AD3d 1300 [2012] [appeal Nos. 510834/512050]).

. The neighbors’ appeal from that order is decided herewith (Town of North Elba v Grimditch, 96 AD3d 1305 [2012] [appeal No. 512752]).

. While “[a] true riparian owner owns land along a river” (Town of Oyster Bay v Commander Oil Corp., 96 NY2d 566, 571 [2001]), and the owner of property along a lake is more accurately described as a littoral owner (see *187 Black’s Law Dictionary 952 [8th ed 2004]), the distinction between these terms is outmoded (see Town of Oyster Bay v Commander Oil Corp., 96 NY2d at 571).

. OGS has the “general care and superintendence of all state lands” not otherwise vested in another state department (see Public Lands Law § 3 [1]).

. The Old Military Tract was created by the Legislature in 1786, prior to the Macomb Patent, as bounty lands for Revolutionary War soldiers (see L 1786, ch 67; People v Tahawus Purchase, Inc., 26 NYS2d at 798, 806, 810; 268 App Div at 102).

. Although not cited by Supreme Court or the parties, Navigation Law §37 provides that the Navigation Law “shall apply to privately owned navigable waters to which the public has or is granted access” for recreational purposes. Thus, even if Lake Placid is considered to be privately owned as the Town and neighbors contend, the fact that the public has access to the lake renders the Navigation Law applicable.